

J. D. & A. B. Spreckels Company, Petitioner, v. Commissioner
of Internal Revenue, Respondent.

Docket No. 90390.   Promulgated February 14, 1940.

*Herbert W. Clark, Esq.*, and *Leon de Fremery, Esq.*, for the
petitioner.

*T. M. Mather, Esq.*, for the respondent.

OPINION.

HARRON: The principal issue for determination is whether or not the Tire Co. was a member of the affiliated group of corporations of which petitioner was the parent, within the intent of section 141 of the Revenue Act of 1932, during the last 10 months of 1933. In the consolidated return filed by petitioner and its affiliated corporations for the calendar year 1933, a deduction was taken for a net loss of $191,268.52, claimed to have been sustained by the Tire Co. during the period in question. The respondent disallowed the deduction on the ground that the Tire Co. was not a member of the affiliated group, within the intent of the statute, during the period in question.

The provisions of section 141 of the Revenue Act of 1932, in so far as they are pertinent to the question here presented, are as follows:

(a) PRIVILEGE TO FILE CONSOLIDATED RETURNS.—An affiliated group of corporations shall, subject to the provisions of this section, have the privilege of making a consolidated return for the taxable year in lieu of separate returns. * * *

*      *      *      *      *      *      *

(d) DEFINITION OF "AFFILIATED GROUP".—As used in this section an "affiliated group" means one or more chains of corporations connected through stock ownership with a common parent corporation if—

(1) At least 95 per centum of the stock of each of the corporations (except the common parent corporation) is owned directly by one or more of the other corporations; and

(2) The common parent corporation owns directly at least 95 per centum of the stock of at least one of the other corporations.

Petitioner contends that it was the owner of all of the capital stock of the Tire Co. during the period from February 20 to

December 31, 1933, and that, therefore, the sole test of affiliation provided by the statute was satisfied. The parties litigant have stipulated that on February 20, 1933, petitioner acquired all of the capital stock of the Tire Co. from the Securities Co. for $1, and that petitioner "remained the owner" of the stock until the Tire Co. was dissolved on December 23, 1935. For the purpose of this proceeding, it is assumed that petitioner was the owner, both in fact and in law, of all of the capital stock of the Tire Co. during the period in question.

Respondent asserts that the Tire Co. was not a member of the affiliated group within the intent of the statute, because of the fact that petitioner's ownership of the stock of the Tire Co. did not serve a business purpose, as distinguished from a tax-reducing purpose.

The first question raised by respondent's contention is one of statutory construction as to whether or not the framers of the statute intended that the privilege of making consolidated returns may be enjoyed in cases where the affiliation does not serve a business purpose, as distinguished from a tax-reducing purpose. If it should be decided that the framers of the statute intended that the privilege may be enjoyed in such cases, it will not be necessary to pass upon the remaining question of fact as to whether or not the affiliation which is involved here served a business purpose, as distinguished from a tax-reducing purpose.

The privilege to make a consolidated return, granted to an affiliated group of corporations, is "akin" to an exemption. *Commissioner* v. *Manus Muller & Co., Inc.*, 79 Fed. (2d) 19, 20. The purpose for the granting of the privilege is stated in the Report of the Senate Finance Committee on the Revenue Bill of 1928, 70th Cong., 1st sess., S. Rept. 960, p. 14, as follows:[1]

The permission to file consolidated returns by affiliated corporations merely recognizes the business entity as distinguished from the legal corporate entity of the business enterprise. Unless the affiliated group as a whole in the conduct of its business enterprise shows net profits, the individuals conducting the business have realized no gain. The failure to recognize the entire business enterprise means drawing technical legal distinctions, as contrasted with the recognition of actual facts. The mere fact that by legal fiction several corporations owned by the same stockholders are separate entities should not obscure the fact that they are in reality one and the same business owned by the same individuals and operated as a unit. To refuse to recognize this situation and to require for tax purposes the breaking up of a single business into its constituent parts is just as unreasonable as to require a single corporation to report

---

[1] In the Report of the Senate Finance Committee on the Revenue Bill of 1932, 72d Cong., 1st sess., S. Rept. 665, p. 10, the following statement appears:

"Your committee made a very exhaustive study and analysis of the entire subject of tax liabilities of affiliated groups of corporations, during its consideration of the revenue bill of 1928. Its conclusions are set forth in its report upon the revenue bill of 1928. It seems unnecessary to repeat them at the present time."

separately for tax purposes the gains from its sales department, from its manufacturing activities, from its investments, and from each and every one of its agencies. It would be just as unreasonable to demand that an individual engaged in two or more businesses treat each business separately for tax purposes.

*Much of the misapprehension about consolidated returns will be removed when it is realized that it is only when the corporations are really but one corporation that the permission to file consolidated returns is given, and that no ultimate advantage under the tax laws really results.* \* \* \* [Italics supplied.]

The purpose for the granting of the privilege is restated succinctly in the Report of the Senate Finance Committee on the Revenue Bill of 1932, 72d Cong., 1st sess., S. Rept. 665, p. 9, as follows:

The provisions for consolidated returns under the present law and regulations recognize sound accounting practices and require tax liabilities to be determined on the basis of the total net income of the enterprise as a whole. *No improper benefits are obtained from the privilege.* [Italics supplied.]

The intent which underlies the granting of the privilege finds some expression in the provisions of subdivision (b) of section 141 of the Revenue Act of 1932, which provides as follows:

(b) REGULATIONS.—The Commissioner, with the approval of the Secretary, shall prescribe such regulations as he may deem necessary in order that the tax liability of an affiliated group of corporations making a consolidated return and of each corporation in the group, both during and after the period of affiliation, may be determined, computed, assessed, collected, and adjusted in such manner as clearly to reflect the income and to prevent avoidance of tax liability.

It is apparent that the privilege was granted in order that the tax liability of a group of corporations which were combined for business purposes into one business unit might be based upon the true net income of the business unit. The framers of the statute evidently believed and intended "that no ultimate advantage under the tax laws really results" from the granting of the privilege to make consolidated returns and that "No improper benefits are obtained from the privilege." It is believed that they did not intend that the privilege be enjoyed in cases where the affiliation relied upon as the basis for the privilege to make a consolidated return is without a business purpose.

The next question raised by respondent's contention is a question of fact as to whether or not the affiliation which is relied upon here served a business purpose, as distinguished from a tax-reducing purpose. In our determination of this question, the close relationship between the time when petitioner acquired the stock of the Tire Co. for $1, and the time when the Tire Co. sustained the loss of $192,849.80 on the sale of its plant, seems very pertinent. In the deficiency notice respondent determined that the Tire Co. sustained the loss on the sale of its plant to the Brewing Co. prior to petitioner's acquisition of the stock of the Tire Co. The fact that the parties to the sale of the plant agreed that the Tire Co. was to pay the first installment, and the Brewing Co. was to pay the second installment, of the 1932–1933 state,

county, and city taxes, and the fact that they agreed, also, that the note to be delivered by the Brewing Co. was to be dated December 1, 1932, and bear interest from that date, indicate that it was the intention of the parties to the sale that the Brewing Co. was to take possession of the Tire Co.'s plant prior to February 20, 1933, the date when petitioner acquired the stock of the Tire Co. Thus, although at the time of petitioner's acquisition of the stock of the Tire Co. the deed to the plant had not yet been delivered to the Brewing Co. and the Brewing Co. had not yet paid the balance of the selling price, there is some foundation for respondent's contention that the Tire Co. sustained the loss on the sale of its plant prior to the date of petitioner's acquisition of the stock of the Tire Co. See *Commissioner* v. *Union Pacific Railroad Co.*, 86 Fed. (2d) 637; *Walter M. Hort*, 39 B. T. A. 922.

However, for present purposes, it is sufficient that at the time of petitioner's acquisition of the capital stock of the Tire Co., it was reasonably certain that the Tire Co. would sustain a loss on the sale of its plant in the immediate future. Prior to the date on which petitioner acquired the stock of the Tire Co., the Brewing Co. had made a payment of $5,000 on account of the selling price; the Securities Co. had released the general mortgage on the plant of the Tire Co. and thus enabled the Tire Co. to perfect its title to the plant; and a policy of title insurance had been issued. On the very same day on which petitioner acquired the stock of the Tire Co., the Tire Co. executed a deed conveying the plant to the Brewing Co. and delivered the deed to the escrow agent, and the Brewing Co. executed a mortgage on the plant in favor of the Tire Co. and delivered the mortgage to the escrow agent. Within six weeks after the date of petitioner's acquisition of the stock, the sale of the plant had been consummated in full; the full consideration had been paid to the Tire Co. in cash and in notes; the deed to the plant had been delivered to the Brewing Co.; and the mortgage on the plant had been delivered to the Tire Co.

In the deficiency notice, respondent determined that the transfer of the stock of the Tire Co. from the Securities Co. to the petitioner "served no business purposes except the reduction of tax liability." In our opinion, the record supports the respondent's determination. In 1927, the Tire Co. had ceased manufacturing operations. In 1931, the Securities Co. had written down its investment in the stock of the Tire Co. from $9,175,149.94 to $1, and had taken a deduction for the resulting loss in its separate income tax return for that year. In 1932, the Tire Co. had received a gross income of only $1,175. This income was from storage rentals, and after the sale of the plant there would be no further income from that source. It is pointed out that the Tire Co. was indebted to the Securities Co. on its notes,

given in exchange for its outstanding bonds, presumably in the sum of $500,000, the par value of the bonds received by the Tire Co. in exchange for its notes. The $50,000 which was to be received by the Tire Co. on the sale of the plant would fall far short of satisfying the indebtedness owed by the Tire Co. to the Securities Co. At the time of petitioner's acquisition of the stock of the Tire Co., that stock had no economic value. The only benefit to petitioner in acquiring the stock in the Tire Co., was reduction of the tax liability of the affiliated group.

As pointed out above, respondent disallowed the claimed loss to petitioner and its affiliates on the ground that petitioner's acquisition of the stock of the Tire Co. "served no business purpose." There is nothing in the record to show the contrary. Rather, it is shown that at the time petitioner acquired the stock of the Tire Co. for the nominal price of $1, the Tire Co. was insolvent; it was not engaged in the business it had been conducting prior thereto; and it had contracted to sell its assets, if it had not already sold them. There is nothing to show that there was any intention of resuming the business of the Tire Co. In fact, that company was dissolved in December of 1935. Under the above facts and circumstances, it is not material that the Tire Co. received a small net income of about $1,500 in 1933 and of about $600 in 1934.

At the time petitioner acquired the stock in the Tire Co., the amount of the loss on the sale of that company's plant was readily ascertainable. Petitioner assumed that the loss, for tax purposes, was one sustained in 1933. The Securities Co., the former owner of the Tire Co., sustained a net loss in 1933 of $1,724,419.53, as is shown on its separate return. The petitioner and its affiliates earned net income of $612,686.23, for 1933, as is shown by the consolidated return. The patent advantage to petitioner in acquiring the Tire Co. stock was to enable the offsetting of the loss of the Tire Co. against the profits of the petitioner and its affiliates.

Petitioner relies on *Bishop Trust Co., Ltd.*, 36 B. T. A. 1173, claiming that the facts there are similar to the facts in this case. The *Bishop Trust Co.* case is distinguishable. In that case the stock of the subsidiary was acquired as a *"bona fide* business move." One of the purposes for the acquisition of the stock of the subsidiary was to enable the parent corporation to take over the business of the subsidiary. Two years later the subsidiary was formally merged into the parent corporation. Furthermore, in the *Bishop Trust Co.* case, there was no evidence that "tax reduction was a motive." The other cases cited by petitioner in support of his contention that "the sole criterion for affiliation contained in the statute is the ownership of the stock" are not in point, because they do not involve the question

of whether an affiliation which does not serve a business purpose, as distinguished from a tax-reducing purpose, is within the intent of the statute.

In *Woolford Realty Co. v. Rose*, 286 U. S. 319, which is cited both by petitioner and by respondent, the parent corporation and the subsidiary became affiliated in 1927, and the question was whether net losses sustained by the subsidiary in the years 1925 and 1926 could be deducted in the consolidated income tax return filed by the affiliated group for the year 1927. There was no suggestion that the affiliation did not serve a business purpose. In holding that the net losses sustained by the subsidiary prior to affiliation could not be deducted in the consolidated return, the Supreme Court stated, through Mr. Justice Cardozo, in part, at pages 329 and 330, as follows:

\* \* \* A different ruling would mean that a prosperous corporation could buy the shares of one that had suffered heavy losses and wipe out thereby its own liability for taxes. *The mind rebels against the notion that Congress in permitting a consolidated return was willing to foster an opportunity for juggling so facile and so obvious.* [Italics supplied.]

In the broad sense, the same reasoning applies here. If Congress did not intend that the privilege of making a consolidated return should be enjoyed by a corporation which acquired ownership of another corporation in order to take advantage of a loss already sustained by that corporation, it seems to follow that Congress did not intend that the privilege should be enjoyed by a corporation which acquired the ownership of another corporation in order to take advantage of a loss certain to be sustained by that corporation in the immediate future, particularly where the acquisition of the ownership of the other corporation served no business purpose.

The same general problem of statutory construction, which is involved here, was involved in *Gregory v. Helvering*, 293 U. S. 465. The Supreme Court held in the *Gregory* case that a "letter perfect"[2] reorganization which served no business purpose was not within the intent of the reorganization exemption provisions of the statute. In this case, we find a parallel. The affiliation in question, although "letter perfect", served no business purpose, and it does not, in our opinion, come within the intent of the affiliation provisions of the statute.

Since petitioner's ownership of the stock of the Tire Co. did not serve a business purpose, as distinguished from a tax-reducing purpose, it is held that the Tire Co. was not a member of the affiliated group within the intent of section 141 of the Revenue Act of 1932,

[2] See Paul, Studies in Federal Taxation, 1937, p. 148.

during the period in question. Respondent's determination is sustained.

Respondent contends, in the alternative, that if the Tire Co. was a member of the affiliated group during the period in question, the loss on the sale of its plant was sustained prior to affiliation, and, that, therefore, under the provisions of article 41 (c) of Regulations 78, the pertinent provisions of which are quoted in the margin,[3] the amount of the net loss sustained by the Tire Co. prior to affiliation which may be taken as a deduction in the consolidated return is limited to one dollar, the cost of the stock of the Tire Co. to petitioner. Respondent's contention, in this respect, has considerable merit. But, in view of our holding above, it is not necessary to pass upon respondent's alternative contention.

*Decision will be entered under Rule 50.*

---

[3] (c) *Net Loss Sustained by Separate Corporation Prior to Consolidated Return Period.*

A net loss sustained by a corporation for a taxable year prior to the taxable year in respect of which its income is included in the consolidated return of an affiliated group (including any net loss sustained for the taxable year 1931) shall be allowed as a deduction in computing the consolidated net income of such group in the same manner, to the same extent, and upon the same conditions as if the consolidated income were the income of such corporation; but in no case will any such net loss be allowed as a deduction in excess of the aggregate basis of the stock of such corporation to the members of the group.