ADVANCE MACHINERY EXCHANGE, Inc., v. COMMISSIONER OF INTERNAL REVENUE.

No. 83, Docket 21447.

United States Court of Appeals Second Circuit.

Argued April 8, 1952.

Decided May 12, 1952.

---

J. H. Landman, New York City, Frank T. Kleiger and James A. Ronayne, New York City, of counsel, for petitioner.

Ellis N. Slack, Acting Asst. Atty. Gen., Helen Goodner and Richard D. Harrison, Sp. Asst. to Atty. Gen., for respondent.

Before CHASE, BIGGS and CLARK, Circuit Judges.

CHASE, Circuit Judge.

The Tax Court affirmed a deficiency assessment in the declared value excess profits taxes and excess profits taxes of the petitioner for the year 1942 on the ground that amounts of income reported by other taxpayers were properly allocable to the petitioner under §§ 45 and 22(a), I.R.C., 26 U.S.C.A. §§ 45 and 22(a). The Tax Court also affirmed the exclusion of certain amounts from the computation of the petitioner's equity invested capital which was a credit in determining the excess profits tax due and from both of these determinations the petitioner has appealed.[1]

Whether the Tax Court was correct in allocating income to the petitioner under § 45, I.R.C. is essentially one of fact and the decision below must be affirmed if support-

---

1. The petitioner also questions several other parts of the Tax Court's decision but they all concern questions of fact only and the decision as to them is supported by the record.

ed by substantial evidence. Section 1141 (a), I.R.C. as amended, 26 U.S.C.A. § 1141 (a). Section 45 provides:

"In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Commissioner is authorized to distribute, apportion, or allocate gross income * * * between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses."

The Tax Court found that the petitioner was organized in 1928 by one Joseph Blachman to deal in used machinery. Subsequently, the Blachman Machinery Company, Inc. and the Awon Holding Corporation were formed, and, in 1939, Joseph Blachman proceeded to engage in this business individually. Joseph Blachman and his son, Seymour Blachman, were officers and directors of all of these corporations, did most of the buying and selling for each of the business enterprises, and they or their immediate families owned all of the stock in them. Each of the enterprises was conducted from the same office with the same employees, using the same equipment, and to a large extent supplying the same customers. The petitioner, however, carried on by far the largest part of this business. There was evidence that large numbers of purchase invoices had been altered to attribute them to one or another of these taxpayers and that these changes were made without any set policy to indicate that there was any motive in doing so other than to divert income from the petitioner. Typical of this shifting of income under the arrangement used was the fact that, in the last half of 1942, when Blachman Machinery Company, Inc. was inactive, and listed no employees in its Social Security returns for that period, the sales invoices indicated that it made 47 separate sales. Such evidence gave the Tax Court an adequate basis on which to find that:

"All four businesses were controlled by J. Blachman and Seymour Blachman, father and son. The two operated the business and kept the books and records of all four businesses in such a way that the net profit of each could be manipulated as they saw fit, and, in general, so conducted the business that it is impossible to determine where the activities of one or the other begin and end." And, in view of the extent to which this was done, to hold that "petitioner had not shown that respondent erred in attributing to it [all] the net income of the three other businesses, * * *".

■■■ The petitioner argues that if the formal tax entities are not to be charged with the income they each received, then, any attribution of income to another taxpayer under § 45 must be to Joseph and Seymour Blachman as individuals, and not to the petitioner, since these individuals controlled all four enterprises. However, as the Tax Court found, "The evidence is clear that petitioner served as the connecting link for the (business) conducted by these four entities and the outside customers." This conclusion is supported by substantial evidence. The petitioner's contention, therefore, indicates a misconception of the purpose served by § 45. It was not these two individuals who, in fact, earned all of the income reported by the four enterprises any more than that would be true of the income of any closely held corporation. An individual "is free to adopt such organization for his affairs as he may choose and having elected to do some business as a corporation, he must accept the tax disadvantages." Higgins v. Smith, 308 U.S. 473, 477, 60 S.Ct. 355, 358, 84 L.Ed. 406. While § 45 permits the Commissioner to reallocate income, it does not permit him to disregard valid tax entities altogether. Here, it was determined that there were four such entities but that only one, in fact, earned the income which was divided among all four and that one was the petitioner. Consequently, it is the taxpayer to whom the income in question was properly allocated.

We need not decide whether what the Commissioner did is sustainable under § 22

(a), I.R.C. alone, cf. Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75; Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731; Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, since we think § 45 is applicable to this situation despite the petitioner's contention that what the Commissioner has done amounts to a consolidation of the income of the various entities as under § 141(d), I.R.C. in violation of Regulation 111, § 29.45–1(b).[2]

At first blush, this regulation would seem to support the petitioner's position but analysis shows the contrary. The effect of such an interpretation would be to exclude from the applicability of § 45 fact situations like the present one if the separate entities involved were all corporations and the Commissioner had sought to allocate all of the income from each to one of them, since this "would produce a result equivalent to a computation of consolidated net income under § 141." It may, perhaps, be sufficient for the present to point out that what was done is not, strictly, equivalent to a consolidation under § 141 since, under that section, only the income of affiliated corporations may be consolidated while here the income of a sole proprietorship was included. However, we do not rely entirely upon this distinction. Whatever valid interpretation may be given this regulation, the unsoundness of that of the petitioner is illustrated by the fact that it would exclude from the "policing" provisions of § 45 the most flagrant evasion by arbitrary shifting of income. It would let the Commission reallocate the income of these separate entities, to reflect the income of each correctly, if the amount involved, however great, did not equal their total combined income but he could not apply § 45 at all if the taxpayers succeeded in constructing a situation where, in order to prevent tax evasion or properly to reflect income, it were necessary to attribute all of the income of the separate entities to one of them, as was done here. Thus tax evasion could be so complete as to make itself invulnerable, a proposition whose statement discloses its fallacy.

■■ Our opinion in Asiatic Petroleum Co. (Delaware), Ltd. v. Commissioner of I. R., 79 F.2d 234, and that of the Third Circuit in National Securities Corp. v. Commissioner of I. R., 137 F.2d 600, indicate clearly that the purpose of § 45 is to prevent tax evasion by any arbitrary shifting of gross income among businesses owned or controlled by the same interests. See 8 Merten's, Law of Federal Taxation, § 46.69. There is no exception, nor any reason for excepting, from this purpose the case where such arbitrary allocation of income is among affiliated corporations who could, under § 141, consolidate their respective incomes. Furthermore, subdivision (i) of § 141 contains this language: "For allocation of income and deductions of related trades or businesses, see section 45." We interpret this subdivision to mean that, although the Commissioner is not free to require affiliated corporations to consolidate their incomes, he may allocate the income among them if they are engaged in "related trades or businesses" and "if it is necessary in order to prevent evasion of taxes or clearly to reflect the income of any such organizations" just as he may do that in respect to other taxpayers and do so to whatever extent that may be necessary to accomplish the purpose of that section.

■ The other principal contention of the petitioner concerns the determination of its equity invested capital credit necessary to compute its excess profits tax. It claims that if the income from these other enterprises are allocable to it, then their equity invested capital credit should likewise be so allocated.[3] We must reject this contention, however, since equity invested capital is to be computed under § 718, I.R.

---

2. "(Section 45) is not intended * * * to effect in any case such a distribution, apportionment, or allocation of gross income, deductions, credits, or allowances, or any item of gross income, deductions, credits, or allowances, as would produce a result equivalent to a computation of consolidated net income under § 141."

3. It was stipulated by the parties that, under a Rule 50 computation, the income of Awon Holding Corporation would not be taxed to the petitioner and, therefore, the petitioner does not contend that the equity invested capital credit of this corporation should be allocated to it.

C., 26 U.S.C. § 718 (1946 ed.) and the definition there does not include money or property paid into some corporation other than the taxpayer claiming the credit, and certainly does not include the net worth of an individual.[4] The petitioner might be right if the other enterprises were mere shams, but they were used for business purposes and their business activity must be recognized in computing the equity invested capital credit. This is consistent with the manner in which § 45 is applicable; the reallocation of income thereunder being based not on a disregard of taxable entities but on the correction of business entries.

Affirmed.

4. "§ 718 Equity invested capital
   "(a) Definition. The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following amounts, reduced as provided in subsection (b)—
   "(1) Money paid in. Money previously paid in for stock, or as paid-in surplus, or as a contribution to capital;
   "(2) Property paid in. Property (other than money) previously paid in (regardless of the time paid in) for stock, or as paid-in surplus, or as a contribution to capital. * * *"