Victor **BORGE**, Sanna Borge, and Danica Enterprises, Inc., Petitioners,

v.

**COMMISSIONER OF INTERNAL REVENUE**, Respondent.

**Nos. 15, 16, Dockets 31903, 31904.**

United States Court of Appeals Second Circuit.

Argued Sept. 30, 1968.

Decided Dec. 17, 1968.

**674**

Milton Young, New York City (Stephen S. Ziegler and Robert D. Howard, New York City, on the brief), for petitioners.

Louis M. Kauder, Atty., Dept. of Justice (Mitchell Rogovin, Asst. Atty. Gen., and Lee A. Jackson and Harry Baum, Attys., Dept. of Justice, on the brief), for respondent.

Before SMITH, KAUFMAN and HAYS, Circuit Judges.

HAYS, Circuit Judge:

Petitioners seek review of a decision of the Tax Court sustaining the Commissioner's determination of deficiencies in their income tax payments for the years 1958 through 1962, inclusive. The Tax Court upheld both the Commissioner's allocation to Borge[1] under Section 482 of the Internal Revenue Code of 1954, 26 U.S.C. § 482 (1964), of a portion of the compensation received by Danica Enterprises, Inc., Borge's wholly owned corporation, for services performed by Borge as an entertainer, and the Commissioner's disallowance, under Section 269 of the Internal Revenue Code of 1954, 26 U.S.C. § 269 (1964), of Danica's deduction of losses from its rock cornish hen business in excess of $50,000 per year, and of its loss carryovers.[2] We affirm.

From April 1952 through February 28, 1959, Borge conducted a poultry business on a 400-acre farm in Connecticut under the name of ViBo Farms. The farm business centered on and pioneered in the development and commercial sale of processed, quality chickens called rock cornish hens.

Borge incurred substantial losses in his poultry business.[3] For each of the years 1954 through 1957 the poultry losses exceeded $50,000. In the first two months of 1958 the poultry losses amounted to $23,133, and market conditions were unfavorable. Borge's tax consultant advised him that if the poultry losses for 1958 exceeded $50,000 the Commissioner would probably recompute Borge's taxes for each year that the losses had exceeded $50,000, pursuant to Section 270 of the Internal Revenue Code of 1954, 26 U.S.C. § 270 (1964).[4] In an effort to avoid the application of Section 270, Borge organized Danica, and, on March 1, 1958, transferred to the corporation,

---

1. "Borge" refers herein to Victor Borge. His wife has been included as a party to the action solely because of the filing of joint returns.

2. The Commissioner has filed a protective petition for review to assure that Danica will not be permitted to deduct the compensation allocated to Borge if the decision of the Tax Court is reversed.

3. Borge's net losses from the poultry business were as follows:

| Calendar Year | Net Loss |
|---|---|
| 1953 | $ 26,665 |
| 1954 | 62,159 |
| 1955 | 79,486 |
| 1956 | 345,879 |
| 1957 | 220,146 |
| 1958 (through February 28) | 23,133 |

4. § 270. Limitation on deductions allowable to individuals in certain cases.
(a) Recomputation of taxable income. If the deductions allowed by this chapter * * * and attributable to a trade or business carried on by him for 5 consecutive taxable years have, in each of such years * * *, exceeded by more than $50,000 the gross income derived from such trade or business, the taxable income * * * of such individual for each of such years shall be recomputed. For the purpose of such recomputation in the case of any such taxable year, such deductions shall be allowed only to the extent of $50,000 plus the gross income attributable to such trade or business, except that the net operating loss deduction, to the extent attributable to such trade or business, shall not be allowed.

in exchange for all of its stock and a loan payable, the assets of the poultry business (except the farm real property).

Borge is a well-known professional entertainer. During the years preceding the organization of Danica he made large sums from television, stage and motion picture engagements.

Since Danica had no means of meeting the expected losses from the poultry business, Borge and Danica entered into a contract at the time of the organization of the corporation under which Borge agreed to perform entertainment and promotional services for the corporation for a 5-year period for compensation from Danica of $50,000 per year. Danica offset the poultry losses [5] against the entertainment profits, which far exceeded the $50,000 per year it had contracted to pay Borge.[6] Borge obviously would not have entered into such a contract with an unrelated party.

Danica did nothing to aid Borge in his entertainment business. Those who contracted with Danica for Borge's entertainment services required Borge personally to guarantee the contracts. Danica's entertainment earnings were attributable solely to the services of Borge, and Danica's only profits were from the entertainment business.

The only year during the period in dispute in which Danica actually paid Borge anything for his services was 1962, when Borge was paid the full $50,000.

The issues in controversy are (1) whether the Commissioner, acting under Section 482 of the Internal Revenue Code of 1954, 26 U.S.C. § 482 (1964), properly allocated to Borge from Danica $75,000 per year from 1958 through 1961 and $25,000 for 1962, and (2) whether the Commissioner, acting under Section 269 of the Internal Revenue Code of 1954, 26 U.S.C. § 269 (1964), properly disallowed Danica's loss deductions in excess of $50,-000 per year for fiscal years 1959 through 1961 and its net loss carryovers for fiscal years 1960 through 1962.

I.

When two or more organizations, trades or businesses, whether or not incorporated, are owned or controlled by the same interests, Section 482 of the Internal Revenue Code of 1954, 26 U.S.C. § 482 (1964), authorizes the Commissioner to apportion gross income between or among such organizations, trades or businesses if he deems that apportionment is necessary clearly to reflect income or to prevent evasion of tax.[7] We conclude that the Commissioner could properly have found that for purposes of Section 482 Borge owned or controlled two businesses, an entertainment business and a poultry business, and that the allocation to Borge of part of the entertainment

---

5. Danica's net poultry losses for the tax years here in dispute were as follows:

| Fiscal Year (ending February 28) | Net Loss |
| --- | --- |
| 1959 | $309,557 |
| 1960 | 194,346 |
| 1961 | 69,473 |
| 1962 | 29,797 |
| 1963 | 57,586 |

6. Danica's net entertainment income for the years in dispute, before deducting Borge's salary, averaged $166,465. The annual net entertainment income was as follows:

| Fiscal Year (ending February 28) | Net Entertainment Income |
| --- | --- |
| 1959 | $141,441 |
| 1960 | 146,402 |
| 1961 | 143,826 |
| 1962 | 283,315 |
| 1963 | 117,340 |

7. § 482. Allocation of income and deductions among taxpayers.

In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary or his delegate may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any such organizations, trades, or businesses.

compensation paid to the corporation was not error.[8]

We accept, as supported by the record, the Tax Court's finding: that Borge operated an entertainment business and merely assigned to Danica a portion of his income from that business; that Danica did nothing to earn or to assist in the earning of the entertainment income; that Borge would not have contracted for $50,000 per year with an unrelated party to perform the services referred to in his contract with Danica. Thus Borge was correctly held to be in the entertainment business.

At the same time Danica, Borge's wholly owned corporation, was in the poultry business.

Petitioners, relying primarily on Whipple v. Commissioner, 373 U.S. 193, 83 S.Ct. 1168, 10 L.Ed.2d 288 (1963), argue that Borge is not an "organization, trade or business" and that Section 482 is therefore inapposite.

In *Whipple* the Supreme Court held only that where one renders services to a corporation as an investment, he is not engaging in a trade or business:

> "Devoting one's time and energies to the affairs of a corporation is not of itself, and without more, a trade or business of the person so engaged. Though such activities may produce income, profit or gain in the form of dividends or enhancement in the value of an investment, this return is distinctive to the process of investing and is generated by the successful operation of the corporation's business as distinguished from the trade or business of the taxpayer himself. When the only return is that of an investor, the taxpayer has not satisfied his burden of demonstrating that he is engaged in a trade or business since investing is not a trade or business and the return to the taxpayer, though substantially the product of his services,

legally arises not from his own trade or business but from that of the corporation." 373 U.S. at 202, 83 S.Ct. at 1174.

Here, however, Borge was in the business of entertaining. He was not devoting his time and energies to the corporation; he was carrying on his career as an entertainer, and merely channeling a part of his entertainment income through the corporation.

Moreover, in *Whipple* petitioner was devoting his time and energies to a corporation in the hope of realizing capital gains treatment from the sale of appreciated stock. When the hoped-for appreciation did not materialize he attempted to deduct his losses as ordinary losses. The Court decided that where one stands to achieve capital gains through an investment, any losses incurred in connection with the investment are capital losses. Borge is clearly earning ordinary income; the only question is who should pay the taxes on it. Thus, *Whipple* is not apposite.

For somewhat similar reasons we find Commissioner v. Gross, 236 F.2d 612 (2d Cir. 1956), on which petitioner also seeks to rely, also inapposite.

Nor do we consider the other cases cited by petitioners persuasive. The Commissioner is not arguing here, as he did, for example, in Charles Laughton, 40 B.T.A. 101 (1939), remanded, 113 F.2d 103 (9th Cir. 1940), that the taxpayer should be taxed on the entire amount paid into the wholly owned corporation, i.e. that the corporation should be ignored. See also Pat O'Brien, 25 T.C. 376 (1955); Fontaine Fox, 37 B.T.A. 271 (1938). Instead he recognizes the existence of the corporation, but under Section 482 allocates a portion of its income to its sole shareholder who alone was responsible for the production of such income.

Petitioner contends that the Congress, in enacting the personal holding com-

8. We agree with petitioners' contention that since Borge's employment contract with Danica went into effect on March 1, 1958, the 1958 allocation should have been only $62,500 (⅚ of $75,000). A recomputation of Borge's deficiency to this extent should be made.

pany and collapsible corporation provisions of the Code, precluded the Commissioner's action in this case under Section 482. We do not read those provisions, however, as the only available methods for dealing with the situations there involved. As the Third Circuit said in National Sec. Corp. v. Commissioner, 137 F.2d 600, 602 (3d Cir.), cert. denied, 320 U.S. 794, 64 S.Ct. 262, 88 L.Ed. 479 (1943),

> "In every case in which [Section 482] is applied its application will necessarily result in an apparent conflict with the literal requirements of some other provision of the [Internal Revenue Code]. If this were not so Section [482] would be wholly superfluous."

The fact that similar, but not identical, factual situations have been dealt with by legislation does not mean that this situation, because it was not also specifically dealt with by legislation, cannot be reached even by a general code provision.

We thus conclude that the Tax Court was correct in upholding the Commissioner's ruling that Borge controlled two separate businesses. See Pauline W. Ach, 42 T.C. 114 (1964), aff'd, 358 F.2d 342 (6th Cir.), cert. denied, 385 U.S. 899, 87 S.Ct. 205, 17 L.Ed.2d 131 (1966).

The Commissioner's action in allocating a part of Danica's income to Borge was based upon his conclusion that such allocation was necessary in order clearly to reflect the income of the two businesses under Borge's common control. The Commissioner's allocation has received the approval of the Tax Court. As this Court held in dealing with the predecessor of Section 482, "Whether the Tax Court was correct in allocating income to the petitioner under § 45 [of the Internal Revenue Code of 1939] is essentially one of fact and the decision below must be affirmed if supported by substantial evidence." Advance Mach. Exch. v. Commissioner, 196 F.2d 1006, 1007–08 (2d Cir.), cert. denied, 344 U.S. 835, 73 S.Ct. 45, 97 L.Ed. 650 (1952). See Int.Rev.Code of 1954, § 7482(a), 26 U.S.C. § 7482(a) (1964). Here the determination of the Commissioner and the decision of the Tax Court are supported by substantial evidence that the income of Borge's two businesses has been distorted through Borge's having arranged for Danica to receive a large part of his entertainment income although Danica did nothing to earn that income, and the sole purpose of the arrangement was to permit Danica to offset losses from the poultry business with income from the entertainment business. The amount allocated by the Commissioner ($75,000 per year) was entirely reasonable—indeed, generous—in view of the fact that Danica's annual net income from Borge's entertainment services averaged $166,465 during the years in question.

## II.

Section 269 of the Internal Revenue Code of 1954, 26 U.S.C. § 269 (1964), provides that where any person acquires control of a corporation for the principal purpose of evading or avoiding federal income taxes by securing the benefit of a deduction or other allowance not otherwise available, the Commissioner may disallow the deduction or allowance.[9]

■ As we have pointed out above Borge organized Danica in order to avoid the recomputation of taxes authorized by Section 270 of the Internal Revenue Code of 1954, 26 U.S.C. § 270

---

9. § 269. Acquisitions made to evade or avoid income tax.
  (a) In general.
  If—
  (1) any person or persons acquire * * *, directly or indirectly, control of a corporation, * * *
  and the principal purpose for which such acquisition was made is evasion or avoidance of Federal income tax by securing the benefit of a deduction, credit, or other allowance which such person or corporation would not otherwise enjoy, then the Secretary or his delegate may disallow such deduction, credit, or other allowance.

(1964).[10] The Tax Court found that "the Commissioner had reason to hold that 'the principal purpose for which [Borge acquired control of Danica]' was evasion of Federal income tax within the meaning of section 269 * * *." That finding is not clearly erroneous and must, therefore, be accepted. Whipple v. Commissioner, supra, 373 U.S. at 203–04, 83 S.Ct. 1168; Commissioner v. Duberstein, 363 U.S. 278, 289–91, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); J. T. Slocomb Co. v. Commissioner, 334 F.2d 269, 273 (2d Cir. 1964); Advance Mach. Exch. v. Commissioner, supra, 196 F.2d at 1007–1008. Indeed, petitioners do not challenge the finding.

■ Since Borge's purpose in organizing Danica was avoidance of the $50,-000 per year loss limitation of Section 270, the Commissioner did not act unreasonably in disallowing, under Section 269, deductions for subsequent years in excess of $50,000—deductions which Borge would have been denied if Danica had not been organized.

■ We find no merit in petitioner's contention that, because Section 270 applies only to deductions "allowable to an individual," Section 269 cannot be used to disallow a deduction claimed by Danica. Section 269 is a general provision. It was "designed to put an end promptly to any market for, or dealings in, interests in corporations or property which have as their objective the reduction through artifice of the income or excess profits tax liability." H.R.Rep. No. 871, 78th Cong., 1st Sess. (1943), reprinted in 1944 Cum.Bull. 901, 938. As the Congress recognized,

"[T]he devices [by which taxes are avoided] take many forms. Thus, the acquisition may be an acquisition of the shares of a corporation, or it may be an acquisition which follows by operation of law in the case of a corporation resulting from a statutory merger or consolidation. The person, or persons, making the acquisition likewise vary, as do the forms or methods of utilization under which tax avoidance is sought. Likewise, the tax benefits sought may be one or more of several deductions or credits, including the utilization of excess profits credits, carry-overs and carry-backs of losses or unused excess profits credits, and anticipated expense of other deductions. In the light of these considerations, the section has not confined itself to a description of any particular methods for carrying out such tax avoidance schemes but has included within its scope these devices in whatever form they may appear." Id.; accord, S.Rep.No. 627, 78th Cong., 1st Sess. (1943), reprinted in 1944 Cum.Bull. 973, 1016–17. It would subvert the purposes of Section 269 to deny the Commissioner the power to disallow the deductions here.

It is argued that Danica's deductions should be allowed because Section 270 does not limit a corporation's deductions to $50,000 regardless of how many years it loses more than that amount. The fact that Danica might have been allowed an unlimited loss deduction had it run the poultry business from its inception in no way tends to contradict the finding that Danica was incorporated with the purpose of evading or avoiding federal income taxes. There is no reason for giving taxpayers the benefit of an incorporation which they did not themselves undertake.

■ Petitioner also argues that Section 269 may not be used to disallow any but built-in losses of the corporation. Nothing in the language of the statute suggests any such limitation on the deductions that may be disallowed. The only requirement is that the deduction be one that the taxpayer would not enjoy but for incorporation. Both the House and the Senate reports specifically state that "anticipated" or "prospective" losses were among those that the Commissioner could disallow as deductions under Section 269. H.R.Rep.No. 871, 78th Cong., 1st Sess. (1943), re-

10. See note 4 supra.

printed in 1944 Cum.Bull. 901, 938; S. Rep.No. 627, 78th Cong., 1st Sess. (1943), reprinted in 1944 Cum.Bull. 973, 1016. While there is authority to the contrary (Herculite Protective Fabrics Corp. v. Commissioner, 387 F.2d 475 (3d Cir. 1968); Zanesville Inv. Co. v. Commissioner, 335 F.2d 507 (6th Cir. 1964)) the better view permits the disallowance of deductions for post-acquisition losses of an acquired corporation where those deductions were a part of the purpose for which the corporation was acquired. Luke v. Commissioner, 351 F.2d 568 (7th Cir. 1965); R. P. Collins & Co. v. United States, 303 F.2d 142 (1st Cir. 1962). See also J. T. Slocomb Co. v. Commissioner, 334 F.2d 269 (2d Cir. 1964).

Petitioners' final argument is that there could have been no attempt to avoid or evade the application of Section 270 because there were no five consecutive years in which the poultry business' deductions exceeded its gross income by $50,000. It is sufficient to dispose of that contention to note that the parties stipulated to the contrary.

Affirmed as modified and remanded for recomputation of the deficiency.

IRVING R. KAUFMAN, Circuit Judge (dissenting in part):

I dissent from that portion of the majority opinion affirming the Tax Court's denial to Danica of deductions for business losses in excess of $50,000 under §§ 269 and 270.

I do not dispute the correctness of the Tax Court's findings that Borge, as the sole proprietor of the ViBo business, had sustained losses in excess of $50,000 in each of the years 1954–1957, and that he incorporated the business for the purpose of avoiding a recomputation of his income disallowing loss deduction in excess of $50,000, which § 270 would have called into play had he sustained another such loss in 1958. Nevertheless, I believe the application of § 270 to Danica through § 269 is improper in this case.

The purpose of § 270 is to limit the extent to which the government will participate in the losses sustained by an individual in the conduct of his trade or business—participation which may be greater than in the case of corporate losses because individual tax rates are higher than corporate rates. It is perfectly clear that § 270, of its own force, has no application to corporate loss deductions and places no limit on the amount of such deductions which a corporation may claim. Thus if the ViBo business had been incorporated from its inception, § 270 would have been of no relevance to it. A problem midway between initial incorporation and the instant case would arise if, for instance, ViBo, while operated as an individual proprietorship, had sustained losses in excess of $50,000 for at least five consecutive years, and after Borge had been disallowed deductions in excess of $50,000 for those years, he had then incorporated the enterprise, which continued to suffer such losses. In such an instance, even if the incorporation was for the purpose of avoiding further disallowance of loss deductions under § 270, the corporation thenceforth should be permitted to deduct the full amount of its losses otherwise allowable. Since the enterprise has already been disallowed any benefit it might have obtained from its prior operation as an individual proprietorship (i. e., the deduction of losses at the higher individual tax rate), there appears no good reason why it should not now be afforded the same treatment as an enterprise incorporated *ab initio*. From this it follows that where, as here, the business is incorporated just before § 270 would be called into play for the purpose of avoiding its application, the proper remedy under § 269 is to disallow the benefit actually obtained by the enterprise while operated as an individual proprietorship. And that benefit was the deduction of business losses from individual income. Thus, the Commissioner should have recomputed the loss deductions for the years ViBo was unincorporated; the remedy which he chose instead, and of which the majority approves, bears no

necessary correlation to the deduction benefit which Borge obtained by incorporating ViBo in avoidance of § 270.

Since the Commissioner did not thus seek to recompute Borge's income, but only that of Danica, I would reverse on this issue.