**HALL PAVING COMPANY,**
Plaintiff-Appellee,

v.

**UNITED STATES of America,**
Defendant-Appellant.

No. 72–1425.

United States Court of Appeals,
Fifth Circuit.

Jan. 8, 1973.

Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Robert S. Watkins, Attys., Tax Div., Dept. of Justice, Washington, D. C., John W. Stokes, Jr., U. S. Atty., Julian M. Longley, Jr., Asst. U. S. Atty., Atlanta, Ga., Lawrence R. Jones, Jr., Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellant.

Joe K. Telford, W. Woodrow Stewart, Gainesville, Ga., Charles W. Hall, Augustus Blackshear, Houston, Tex., for plaintiff-appellee.

Before COLEMAN, AINSWORTH and DYER, Circuit Judges.

AINSWORTH, Circuit Judge:

The United States alleges that Hall Paving Company acquired five corporations on April 1, 1963, for the principal purpose of filing a consolidated tax return and thereby utilizing the corporations' anticipated post-acquisition operating losses to offset Hall's otherwise taxable income for the tax year ending October 31, 1963. The Internal Revenue Service denied the deductions by authority of section 269 [1] of the Internal Revenue Code of 1954 (26 U.S.C. § 269). Hall paid the additional tax due and sued the United States for a refund in federal district court.

■ Hall was granted summary judgment on the theory that section 269 is inapplicable to post-acquisition losses. We believe the decision below violates both the literal language of section 269 and the purpose of the statute as revealed by the legislative history. Accordingly, we reverse and remand for a trial on the remaining factual dispute over Hall's reason for the acquisitions.

Hall is a profitable business engaged in constructing highways. The five acquired corporations operated bowling alleys. Their financial history indicates substantial losses for the years before and after the acquisition. By acquiring the five corporations and by filing a consolidated return, Hall reduced its income with the other corporations' operating losses. These losses claimed by Hall are only the losses incurred by the five corporations after the acquisition date of April 1, 1963.

Section 269 prevents Hall from deducting the losses if its principal pur-

1. Section 269(a) provides:

"(a) In general.—If—

(1) any person or persons acquire, or acquired on or after October 8, 1940, directly or indirectly, control of a corporation, or

(2) any corporation acquires, or acquired on or after October 8, 1940, directly or indirectly, property of another corporation, not controlled, directly or indirectly, immediately before such acquisition, by such acquiring corporation or its stockholders, the basis of which property, in the hands of the acquiring corporation, is determined by reference to the basis in the hands of the transferor corporation,

and the principal purpose for which such acquisition was made is evasion or avoidance of Federal income tax by securing the benefit of a deduction, credit, or other allowance which such person or corporation would not otherwise enjoy, then such deduction, credit, or other allowance shall not be allowed. For purposes of paragraphs (1) and (2), control means the ownership of stock possessing at least 50 percent of the total combined voting power of all classes of stock entitled to vote or at least 50 percent of the total value of shares of all classes of stock of the corporation."

pose in acquiring the corporations was "evasion or avoidance of Federal income tax by securing the benefit of a deduction [it] would not otherwise enjoy." The District Judge held that "the general factual situation surrounding the purchase of the bowling corporation stock tends to support the government position enough to justify a finding that there is a genuine dispute as to taxpayer's motivation in purchasing the stock." [2]

This factual dispute over motivation would have gone to trial but for the District Judge's reading into the statute the following limitation: "[s]ection 269 does not prohibit the offsetting of actual post-affiliation losses of the subsidiary against the post-affiliation income of the acquiring taxpayer." Thus the Trial Judge's restrictive interpretation of section 269 would effectively limit the disallowance of deductions to losses that the acquired corporations already incurred before the acquisition [3] and to built-in losses.[4] Since Hall only claimed deductions for losses that the corporations incurred after the acquisition, the District Judge, 338 F.Supp. 670, granted summary judgment under his conception of the law.

This restrictive interpretation is discussed in at least five Circuit Court cases with two Circuits supporting the District's Court's decision and three rejecting it. *Compare* Herculite Protective Fabrics Corp. v. Comm'r, 3 Cir., 1968, 387 F.2d 475; Zanesville Investment Co. v. Comm'r, 6 Cir., 1964, 335 F.2d 507, with Borge v. Comm'r, 2 Cir., 1968, 405 F.2d 673, cert. den. sub nom. Danica Enterprises, Inc. v. Comm'r, 395 U.S. 933, 89 S.Ct. 1994, 23 L.Ed.2d 448 (1969); Luke v. Comm'r, 7 Cir., 1965, 351 F.2d 568; R. P. Collins & Co., Inc. v. United States, 1 Cir., 1962, 303 F.2d 142.[5] We concur with the majority and in particular with the analysis in the most recent pronouncement by the Second Circuit in *Borge*. The language of the statute gives no hint of any restriction to pre-acquisition losses. Without qualification the statute approves the disallowance of any deduction obtained by a corporate acquisition motivated principally by a desire to avoid taxes. The government may have difficulty proving such motivation for post-acquisition losses,[6] but such difficulty does not lead this Court to establish a *per se* rule preventing the government from attempting to do so. The legislative history indicates that the congressional purpose was to enable the Internal Revenue Service to disallow not only current and past losses but also prospective and anticipated losses. H.R.Rep.No.871, 78th Cong., 1st Sess. (1943), reprinted in 1944 C. B. 901, 938; S.Rep.No.627, 78th

---

2. The existence of a factual dispute is challenged by the taxpayer on the theory that the government failed to "set forth specific facts showing that there is a genuine issue for trial" as required by Rule 56(e), Fed. R.Civ.P. There are sufficient facts elicited by the government's interrogatories to support the District Judge's finding.

3. To illustrate, such losses include pre-acquisition operating losses carried forward to the post-acquisition tax year through section 172.

4. To illustrate, the acquired corporation may have land or equipment with an adjusted tax basis higher than the fair market value which it contracted to sell before the acquisition but which is not executed until after the acquisition. *E. g.*, J. D. & A. B. Spreckels Co., 41 B.T.A. 370 (1940).

5. *See generally* B. Bittker & J. Eustice, Federal Taxation of Corporations and Shareholders 16–32. (1971); 7 Mertens, Law of Federal Income Taxation § 38.69, p. 220 (1967); Adlman, Recent Cases Increasingly Extend Section 269 to Disallow Post-acquisition Operating Losses, 17 J.Tax. 282 (1962); Bean, Section 269 and Postacquisition Losses, 49 ABAJ 907 (1963); Dunn, The New Consolidated Return Regulations May Preempt the Field in Determining the Allowance of Operating Losses, 23 Tax L.Rev. 185, 201–08 (1968); Schechter, Climate Is Improving for Deduction of Post-acquisition Losses, 31 J.Tax. 202 (1969).

6. On the burden of proof, *see* Bobsee Corp. v. United States, 5 Cir., 1969, 411 F.2d 231, 238; American Pipe & Steel Corp. v. Comm'r, 9 Cir., 1957, 243 F.2d 125.

**264**

Cong., 1st Sess. (1943), reprinted in 1944 C. B. 973, 1016. *See also* Reg. 1.-269–3(b)(1).

This Circuit's decision in Supreme Investment Corp. v. United States, 5 Cir., 1972, 468 F.2d 370, is not inconsistent with our decision to apply section 269 to post-acquisition losses under the circumstances presented here. In *Supreme Investment* the acquiring corporation purchased all the shares of another corporation and then promptly liquidated the acquired corporation. The question was whether section 269 prevailed over section 334(b)(2) to prevent the acquiring corporation from obtaining a higher tax basis in an asset than the acquired corporation had. The Court turned to the legislative history of section 269. S. Rep.No.627, 78th Cong., 1st Sess. (1943), reprinted in 1944 C. B. 973, 1017, suggests an examination of the "legislative plan" of the Internal Revenue Code section used by the taxpayer to obtain the tax benefit. Because Congress added section 334(b)(2) to substitute an objective test for the subjective test previously used [7] to decide whether to alter a tax basis after liquidation of a recently purchased subsidiary, the Court thought that it would be inappropriate to inject another subjective test through the application of section 269. No such situation is presented in the present case. The legislative history of section 269 itself indicates Congress intended to discourage one corporation from buying another corporation when the main reason is to take advantage of the other corporation's operating loss. H.R.Rep. No.871, 78th Cong., 1st Sess. (1943),

reprinted in 1944 C.B. 901, 938. *See also* S.Rep.No.673, 78th Cong., 1st Sess. (1943), reprinted in 1944 C. B. 673, 1017 (mentioning the "consolidated returns provisions").[8]

This case is remanded to the District Court for a trial on the factual issues to determine whether Hall's principal purpose for the acquisition of the corporations was to avoid federal income tax by securing the benefit of a deduction it would not otherwise enjoy.

Reversed and remanded.

---

7. Kimbell-Diamond Milling Co., 14 T.C. 74 (1950), aff'd 5 Cir., 1951, 187 F.2d 718, cert. den. 342 U.S. 827, 72 S.Ct. 50, 96 L.Ed. 626 (1951). *See generally* Bittker & Eustice 11–36.

8. Commentators suggest the use of a consolidated return may be denied without referring to section 269 where a corporation is acquired solely to take advantage of its tax attributes. Bittker & Eustice 15–54, 15–74. However, in this case the United States said:

The provisions governing the filing of consolidated returns are set forth in Sections 1501–1504 of the Internal Revenue Code. For purposes of this appeal, the Government does not contest the District Court's conclusion (R. 81–82) that no separate business purpose need be shown in order to qualify for the privilege of filing consolidated returns, but, rather, that the business purpose test has been superseded, and is subsumed, by Section 269 of the Code (R. 85–86).
Brief for the Appellant at 4, n. 2.