FREDERICK H. FOGLESONG and ELIZABETH C. FOGLESONG, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent FRED H. FOGLESONG CO., INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Foglesong v. Commissioner
Docket Nos. 4725-73, 4726-73.
United States Tax Court
T.C. Memo 1976-294; 1976 Tax Ct. Memo LEXIS 109; 35 T.C.M. (CCH) 1309; T.C.M. (RIA) 760294; September 20, 1976, Filed James J. Shrager and Charles S. Dunetz, for the petitioners. Kenneth G. Gordon, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: In these consolidated cases, respondent has determined *111 the following deficiencies: Docket No.
Taxable Year Deficiency
4725-73
1966
$27,399.00
1967
41,163.00
1968
48,573.00
1969
52,932.00
4726-73
1967
$39,329.23
1968
19,903.98
1969
14,707.32
1970
13,639.94
The issues presented for our decision are as follows: 1. Whether income attributable to selling activities conducted by petitioner Frederick Foglesong is taxable to his closely-held corporation, petitioner Fred H. Foglesong Co., Inc., or whether such income is properly taxable to petitioner Frederick Foglesong individually under section 61 [1] and/or section 482. 2. If any portion of such income is properly taxable to petitioner Fred H. Foglesong Co., Inc., whether such petitioner is liable for the personal holding company tax provided for under section 541. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners Frederick H. and Elizabeth C. Foglesong are husband and wife who filed their Federal income tax returns for taxable years 1966 to 1970, inclusive, with the District Director, Newark, *112 New Jersey. At the time their petition herein was filed, petitioners resided in Wheaton, Illinois. Petitioner Fred H. Foglesong Co., Inc. (hereinafter Foglesong Co.) is a New Jersey corporation that had its principal place of business in Wheaton, Illinois, at the time its petition herein was filed. Foglesong Co. filed its Federal income tax returns for its taxable years ending August 31, 1967 to August 31, 1970, inclusive, with the District Director, Newark, New Jersey. Petitioner Frederick H. Foglesong (hereinafter petitioner) was graduated from the University of Michigan with a masters degree in chemical engineering. Between approximately 1946 and 1948 he worked in Canton, Ohio, for a company that manufactured roller bearings. In about 1948, he was employed by Babcock & Wilcox Company. After working for that company for approximately 14 years, he resigned in late 1962, at which time he held the position of sales manager. On March 30, 1962, petitioner entered into a sales agreement with Plymouth Tube (Plymouth), a division of Van Pelt Corporation, and on June 28, 1963, he entered into a similar agreement with Pittsburgh Tube Company (Pittsburgh). Both Plymouth and Pittsburgh *113 are engaged in the manufacture and sale of cold drawn steel tubing. Under both agreements, petitioner was to act as a sales representative in specifically defined geographical areas. Petitioner's duties under both agreements included servicing existing customers, soliciting new business, responding to technical questions concerning steel tubing, negotiating orders for customers, and distributing the companies' promotional material. Petitioner's impressive professional reputation as well as his technical and educational background were instrumental in his being hired by both Plymouth and Pittsburgh. However, because both companies provided technical services to its customers, such a background was not a prerequisite for being hired or being successful in the field. Petitioner decided to incorporate his sales business, consequently he contacted Arthur A. Foy (Foy), a certified public accountant, advised with him, and on August 30, 1966, Foglesong Co. was incorporated under the laws of the State of New Jersey. The authorized and outstanding shares of common stock of Foglesong Co. were issued for a total amount of $1,000 and were held as follows: Shareholders
Shares Held
Fred H. Foglesong
98
Elizabeth C. Foglesong
1
Arthur A. Foy
1
*114 Foy paid no money for his one share of common stock, and was made a shareholder simply to comply with New Jersey State law. Foglesong Co. also had certain authorized and outstanding shares of preferred stock which were issued to (and are still held by) petitioner's four minor children for a total amount of $400. Both the $1,000 for the common stock and the $400 for the preferred stock were paid for out of petitioner's personal checking account. On August 23, 1966, petitioner sent Pittsburgh a letter advising that company of his decision to incorporate and requesting that it make future commission checks payable to Foglesong Co. and that his sales agreement be amended to reflect this change. On September 1, 1966, Pittsburgh's executive vice president sent petitioner a letter acknowledging his letter and stating that he would make the appropriate amendments to the agreement. On September 6, 1966, following a conversation with petitioner, Plymouth's sales manager sent petitioner a letter in reference to their existing sales agreement stating that petitioner's contract had been appropriately amended and that all future commissions would be paid to Foglesong Co. After the *115 formation of Foglesong Co. and after the exchange of the above-mentioned letters, all commissions from Pittsburgh and Plymouth were paid to Foglesong Co. However, it was not until May 19, 1969, that Foglesong Co. actually entered into a written contractual relationship with Pittsburgh and not until January 1, 1971, that it signed a written contract with Plymouth. Petitioner testified that he wanted to incorporate his business in order to obtain the limited liability protection afforded by the corporate structure and also to provide a better vehicle for his planned expansion into several new business ventures.
Subsequent to the formation of Foglesong Co., petitioner interviewed a prospective salesman to help him in the New England area, but these negotiations were unsuccessful. Foglesong Co. did, however, employ a secretary during its taxable years ending August 31, 1969 and 1970. This secretary was paid $6,250 during the 1969 fiscal year and $8,491.25 during the 1970 fiscal year, and Foglesong Co. took salary deductions for these amounts on its respective corporate income tax returns. Foglesong Co. paid all of petitioner's expenses incurred in connection with his sales activities, *116 carried its own insurance coverage, maintained a company automobile, and complied with the formalities required of corporations in the State of New Jersey. In addition, Foglesong Co. adopted bylaws, held an initial meeting of incorporators at which the board of directors was elected, held an initial meeting of the board of directors at which the officers were elected, and conducted periodic board of directors' and stockholders' meetings as required by its bylaws. Petitioner served as chairman of the board of directors as well as president and treasurer of Foglesong Co. During the years at issue petitioner did not enter into any written employment contract with Foglesong Co. nor did he enter into a covenant not to compete with that company. During each of the years at issue approximately two percent of the annual commissions paid to Foglesong Co. were attributable to sales which took place within certain exclusive geographical areas designated by Plymouth and Pittsburgh and were not paid as a result of any sales activities conducted by petitioner. All of Foglesong Co.'s gross receipts for each of its taxable years in question were composed of commissions received from Plymouth *117 and Pittsburgh and were as follows: Taxable Year Ending
Gross Receipts
August 31, 1967
$156,176.90
August 31, 1968
120,900.65
August 31, 1969
126,617.74
August 31, 1970
148,598.32
On its income tax returns, Foglesong Co. deducted the following amounts as compensation to petitioner: Taxable Year Ending
Amounts
August 31, 1967
$ 41,500.00
August 31, 1968
55,000.00
August 31, 1969
65,000.00
August 31, 1970
73,700.00
Petitioner's duties and responsibilities under both the Plymouth and Pittsburgh contracts remained the same after Foglesong Co. was incorporated. During the first four months after the formation of Foglesong Co. (August 30-- December 31, 1966), petitioner continued to perform services on behalf of Plymouth and Pittsburgh but he received no salary from Foglesong Co. during this period. Foglesong Co. had funds during this period with which it could have compensated petitioner, but it did not do so primarily because petitioner did not want any additional taxable income during that year. Foglesong Co., during its taxable year ending August 31, 1967, opened a stock brokerage account in its name and commenced trading in *118 securities in unrelated companies. It had stock investments at the end of the taxable years in question as reflected on its balance sheets attached to its Federal income tax returns in the following amounts: Taxable Year Ending
Amount
August 31, 1967
$91,955.51
August 31, 1968
35,337.96
August 31, 1969
83,592.06
August 31, 1970
34,983.92
Foglesong Co. reported net capital gains and dividends attributable to these stocks in the following manner: Taxable Year Ending
Net Capital Gains Dividends
August 31, 1967
$3,225.27
$ 244.93
August 31, 1968
3,393.08
5,001.65
August 31, 1969
0
3,499.32
August 31, 1970
0
1,938.73
During the taxable years at issue no dividends were paid on its common stock and it made dividend distributions in the following amounts to petitioner's minor children as holders of preferred stock: Taxable Year Ending
Amount
August 31, 1967
$ 8,000.00
August 31, 1968
8,000.00
August 31, 1969
8,000.00
August 31, 1970
14,000.00
Foglesong Co.'s certificate of incorporation provides that all its common and preferred shares of stock are without par value. This certificate also provides as *119 follows: All or any part of said shares of common and preferred stock, without nominal or par value, may be issued by the corporation from time to time and for such consideration as may be determined upon and fixed by the Board of Directors, as provided by law. The holders of preferred stock, in preference and priority to the holders of common stock, and the holders of common stock shall be entitled to receive only such dividends as may be declared by the Board of Directors. * * *
In furtherance and not in limitation of the powers conferred by statutes, the Board of Directors is expressly authorized: * * *
To fix and vary the amount of the working capital of the corporation and to determine what, if any, dividends shall be declared and paid. On this same subject, Foglesong Co.'s bylaws provide: Subject to provisions of the statutes, the Board of Directors may declare and pay dividends upon the outstanding shares of the corporation, from funds legally available therefor, from time to time and to such extent as they deem advisable, in cash, property or in capital stock of the corporation. In actual practice, as president of the corporation and chairman of the *120 board of directors, all decisions regarding the payment of dividends were made solely by petitioner. OPINION Respondent concedes that Foglesong Co. was a viable, taxable entity during the years at issue, but argues that the income purportedly earned by Foglesong Co. was in reality earned by petitioner. Accordingly, respondent contends that under the broad scope of section 61 and the assignment of income doctrine of Lucas v. Earl,281 U.S. 111 (1930), such income should properly be taxed to petitioner. It has long been recognized that a taxpayer is free to arrange his business affairs in such a way as to minimize his taxes. Commissioner v. First Security Bank of Utah,405 U.S. 394, 398 n. 4 (1972); V. H. Monette & Co.,45 T.C. 15, 32 (1965); Polak's Frutal Works, Inc.,21 T.C. 953, 973 (1954). An equally well-settled principle of tax law, however, is that, notwithstanding the formal and legal structure of such an arrangement, income should be taxed to the taxable entity that actually earns it. Lucas v. Earl,supra; *121 Paul W. Trousdale,16 T.C. 1056, 1065 (1951). The instant case is but another in a long line of cases in which the courts have been confronted with the inherent conflict between these two principles and forced to decide whether income derived from personal services performed by a taxpayer, presumably on behalf of his closely-held corporation, should be taxed to the corporation or to the individual taxpayer. E.g. Borge v. Commissioner,405 F. 2d 673 (2d Cir. 1968); Elvin V. Jones,64 T.C. 1066 (1975); American Savings Bank,56 T.C. 828 (1971); Jerome J. Roubik,53 T.C. 365 (1969); Richard Rubin,[2]51 T.C. 251 (1968), revd. 429 F. 2d 650 (2d Cir. 1970). Where, as here, the corporation involved is admittedly a separate taxable entity and not a mere sham, the issue has generally narrowed to whether the corporation has been given sufficient corporate substance and sufficient control over the earning of the income so that it, and not the indivdual taxpayer, can be considered *122 the true earner of the income. American Savings Bank,supra;Jerome J. Roubik,supra.
After a careful examination of the entire record before us, we find that petitioner's primary motive in forming Foglesong Co. was the avoidance of taxes and that the control over the earning of virtually all of the income in question remained with the petitioner. Accordingly, we hold that, with one limited exception to be discussed infra, the income *123 reported by Foglesong Co. on its returns for the years at issue was in fact earned by, and is taxable to petitioner.
Petitioner testified that his sole reasons for incorporating stemmed from his desire to limit his personal liability and to provide a more appropriate vehicle for his planned expansion and diversification into other business areas. Foy, petitioner's accountant, confirmed that these were the concerns that petitioner had expressed to him during the preliminary stages of setting up Foglesong Co. Apart from this testimony, however, petitioner offered no corroborative evidence to prove that these were the sole reasons he incorporated and, in many respects, we found his testimony to be most unsatisfactory. For example, petitioner stated that he became concerned about his personal liability after having been threatened with two lawsuits, but did not state who threatened him or under what circumstances. He testified that in the steel tubing industry there was a growing concern among salesmen about their personal liability, yet he neglected to have this broad assertion verified by either Pittsburgh's president, Rodney Hornbache, or by Charles Foster, Plymouth's sales manager, *124 both of whom he called to testify on his behalf.As for his assertion that he had unsuccessfully attempted to expand his sales business into other areas, such as steel warehousing, transportation of steel tubing, and the exporting of steel tubes to Europe, petitioner produced no correspondence between himself and other companies suggesting such attempts, no records of expenses incurred in these alleged ventures, or any other evidence apart from his own self-serving testimony that such attempts at expansion had ever been made. Petitioner's explanation simply does not stand up in front of the numerous indicia of tax avoidance in the record before us. First and foremost, we note that no dividends were paid on the common, but that the preferred stock in Foglesong Co. (issued to petitioner's four minor children) paid dividends as follows: Taxable Year Ending
Amount
August 31, 1967
$ 8,000.00
August 31, 1968
8,000.00
August 31, 1969
8,000.00
August 31, 1970
14,000.00
Under its certificate of incorporation and its bylaws, [3] as well as under the applicable New Jersey corporation law, Foglesong Co.'s board of directors was given sole discretion to decide if, *125 when, and in what amount dividends would be paid. In actual practice, petitioner himself made these decisions. Thus, under this arrangement, petitioner could and did siphon off part of his annual earnings and transfer them to his children, thus greatly reducing the tax thereon. Further, we note that, although continuing to perform under both the Pittsburgh and Plymouth contracts between the date of incorporation and the end of that calendar year (August 30--December 31, 1966), petitioner failed to receive any salary for this period. Foy conceded at trial that there was a "possibility" that one of the reasons behind such failure was to stabilize petitioner's tax bracket for that year. This appears to have been more than a mere "possibility," and we think that the tax avoidance purposes behind this arrangement are obvious. See Elvin V. Jones,64 T.C. 1066, 1076 (1975). Along these same lines, prior to the date of Foglesong Co.'s incorporation, petitioner performed services under both contracts for which he was not paid until after that date. However, these earnings were reported as income by Foglesong Co., and no attempt *126 was made by petitioner to allocate such amounts to himself.
In summary, although we realize that there was no attempt by petitioner (as in many of the reported cases) [4] to form a corporation for the purpose of taking advantage of losses incurred by a separate trade or business, we must conclude that, on balance, tax avoidance considerations far outweighed any genuine business concerns petitioner may have had in setting up Foglesong Co. We are also firmly convinced that during the years at issue the control over the income remained with petitioner so as to cause such income to be taxable to him and not Foglesong Co. American Savings Bank,supra at 839; Richard Rubin,supra. He conducted his business operations in an identical manner both before and after incorporation. Virtually all of the corporation's income was generated by petitioner since, apart from one secretary employed for 1969 and 1970, he was Foglesong Co.'s sole employee. There was never a written employment contract or a covenant not to compete between petitioner *127 and Foglesong Co. and, thus, he had complete control over the corporation's financial fate and could have set up a separate business and ceased working for Foglesong Co. altogether without any recourse or repercussions from his corporation. American Savings Bank,supra at 842. It is for these reasons that we find petitioner to have controlled and directed the earning of the income and hold that such income, for the most part, is taxable to him and not Foglesong Co. However, we do not find that all of the income returned by Foglesong Co. during the years at issue should be taxed to petitioner. In our findings of fact, we have found that two percent of the commissions earned during each of the years at issue were not earned due to any efforts attributable to petitioner but solely because of sales that took place within certain geographical areas assigned to Foglesong Co. under the sales agreements.Accordingly, we hold that such amounts cannot be considered as earned by petitioner and are properly taxable to Foglesong Co. See Richard Rubin,supra at 269. Because of our holding on the section 61 and assignment of income question, we need not reach the issue of *128 whether the income should be taxed to petitioner under section 482. Having decided that a part (two percent) of the annual commission earnings are properly taxable to Foglesong Co., we must reach respondent's contention that, during the years at issue, Foglesong Co. was a "personal holding company" and subject to the tax imposed thereon. On this issue we hold for Foglesong Co. Section 541[5] imposes a tax on the undistributed personal holding company income of every personal holding company. Section 542, [6] in general, defines a "personal holding company" as one in which more than 50 percent of its stock is owned by not more than five individuals and at least 60 percent of its income is "personal holding income." Section 543 provides, in part, as follows: SEC. 543. PERSONAL HOLDING COMPANY INCOME. (a) General Rule.--For purposes of this subtitle, the term "personal holding company income" means the portion of the adjusted ordinary gross income which consists of: * * *
(7) Personal Service Contracts.-- (A) Amounts received under a contract under which the corporation is *129 to furnish personal services; if some person other than the corporation has the right to designate (by name or by description) the individual who is to perform the services, or if the individual who is to perform the services is designated (by name or by description) in the contract; and (B) amounts received from the sale or other disposition of such a contract. This paragraph shall apply with respect to amounts received for services under a particular contract only if at some time during the taxable year 25 percent or more in value of the outstanding stock of the corporation is owned, directly or indirectly, by or for the individual who has performed, is to perform, or may be designated (by name or by description) as the one to perform, such services. *130 In the instant case, the stock ownership requirement of section 542(a)(2) is obviously satisfied, and the parties are in agreement that the resolution of the personal holding company issue depends solely upon whether the commission payments made to and received by petitioner Foglesong Co. from Plymouth and Pittsburgh during the years at issue constitute "personal holding income" under the above-quoted "personal service contracts" provision. At the outset, notwithstanding our holding that petitioner and not Foglesong Co. was the true earner of the income, we nevertheless are of the opinion that after Plymouth and Pittsburgh had accepted Foglesong Co. as the party to their respective sales agreements, that corporation and not petitioner became the party obligated to perform under such agreements. A novation is a contract which discharges immediately a previous contractual duty, creates a new contractual duty, and includes as a party one who neither owed the previous duty nor was entitled to its performance. 2 Restatement of Contracts, sec. 424 (1932). Viacom Intern. Inc. v. Tandem Productions, Inc.,526 F. 2d 593 (2d Cir. 1975). *131 New Jersey follows this definition of a novation and, under New Jersey law, whether or not a valid novation has taken place is a factual question and can only be found where there is clear and definite expression on the part of all the parties involved that a novation is intended. Tolland v. Lista,46 N.J. Super. 272, 134 A. 2d 601 (N.J. Super. Ct. 1957). Petitioner notified both Pittsburgh and Plymouth of his decision to incorporate and his desire to have his respective sales agreements amended by substituting Foglesong Co. for himself as the party to both agreements. Both Pittsburgh and Plymouth agreed to petitioner's requested amendment, and so notified petitioner in writing. Therefore, under general principles of contract law, and specifically under New Jersey law, the facts before us clearly establish that a novation occurred whereby Foglesong Co. was substituted for petitioner as the party to the sales agreements with both Plymouth and Pittsburgh.We view the contract Foglesong Co. signed with Pittsburgh on May 19, 1969, and the one entered into with Plymouth on January 1, 1971, as mere formal ratifications of this prior substitution. Accordingly, we *132 reject respondent's argument that petitioner and not Foglesong Co. was the true party to the respective sales agreements with Plymouth and Pittsburgh. [7] When both sales agreements are viewed with Foglesong Co. as the substituted party, there are simply no rights granted to any person other than Foglesong Co. to designate the individual who is to perform the sales activities nor is petitioner or any other individual designated, either by name or description, in such contracts as the person who is to conduct such activities. The mere expectation that petitioner would be the individual to carry on the sales activities, without specific designation thereof, is insufficient to transform the amounts received into personal holding company income. S. O. Claggett,44 T.C. 503, 513 (1965); Rev. Rul. 75-67, 1975-1 C.B. 169; Rev. Rul. 75-249, 1975-1 C.B. 171. *133 Decisions will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954.↩
2. As noted, this case was reversed by the Second Circuit. That court stated that while resort to "common law" doctrines of taxation and the broad sweep of section 61 may occasionally be utilized, such an approach is inappropriate where there is a specific statutory provision, namely section 482, adequate to deal with the problem. Rubin v. Commissioner,429 F. 2d 650, 653 (2d Cir. 1970). The instant case is not appealable to the Second Circuit and, given the factual setting herein, we think that the so-called "common law" doctrine of assignment of income and section 61 are applicable. See American Savings Bank,56 T.C. 828 (1971); Elvin V. Jones,64 T.C. 1066↩ (1975).
3. N.J. Stat. Ann. 14A:7-14↩ (1969).
4. E.g. Borge v. Commissioner,405 F. 2d 673 (2d Cir. 1968); Pauline W. Ach,42 T.C. 114↩ (1964).
5. SEC. 541. IMPOSITION OF PERSONAL HOLDING COMPANY TAX. In addition to other taxes imposed by this chapter, there is hereby imposed for each taxable year on the undistributed personal holding company income (as defined in section 545) of every personal holding company (as defined in section 542↩) a personal holding company tax equal to 70 percent of the undistributed personal holding company income. 6. SEC. 542. DEFINITION OF PERSONAL HOLDING COMPANY. (a) General Rule.--For purposes of this subtitle, the term "personal holding company" means any corporation (other than a corporation described in subsection (c)) if-- (1) Adjusted Ordinary Gross Income Requirement.-- At least 60 percent of its adjusted ordinary gross income (as defined in section 543(b)(2)) for the taxable year is personal holding company income (as defined in section 543(a)), and (2) Stock Ownership Requirement.--At any time during the last half of the taxable year more than 50 percent in value of its outstanding stock is owned, directly or indirectly, by or for not more than 5 individuals. * * *↩
7. While such an argument no doubt supports respondent's position on the previously discussed issue, we are puzzled as to why he raises it with respect to the personal holding company question. If petitioner, and not Foglesong Co., was the party obligated to perform under these contracts, then we fail to understand how the commission payments made to that corporation could qualify as "[Amounts] received under a contract under which the corporation is to furnish personal services" so as to constitute personal holding company income under section 543(a)(7)(A)↩.