**WISCONSIN BIG BOY CORPORATION et al., Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**MARC'S BIG BOY PROSPECT, INC., et al., Petitioners-Appellees,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.**

**Nos. 18470, 18471.**

United States Court of Appeals, Seventh Circuit.

Nov. 23, 1971.

Isadore Cassuto, New York City, for petitioners-appellants, Wisconsin Big Boy; Chase & Marks, New York City, of counsel.

Johnnie M. Walters, Asst. Atty. Gen., Tax Div., David English Carmack, Atty., U. S. Dept. of Justice, Washington, D. C., Meyer Rothwacks, Thomas L. Stapleton, Attys., Tax Div., Dept. of Justice, Washington, D. C., for Commissioner of Int. Revenue.

Before SWYGERT, Chief Judge, and FAIRCHILD and KERNER, Circuit Judges.

FAIRCHILD, Circuit Judge.

These appeals involve the allocation under 26 U.S.C. § 482, of all the income of subsidiaries to the parent corporation.

Collectively the business of taxpayers is to operate restaurants in Wisconsin under the Big Boy franchise and trademark. During the years in question there were ten restaurants. A separate corporation operated each. Wisconsin Big Boy Corporation (WBB) had obtained the franchise from an unrelated California corporation which had developed a particular pattern of restaurant operation. WBB holds all the stock of the ten restaurant corporations, has granted them subfranchises, and supervises them and performs bookkeeping and other services for them for a fee. The restaurants follow the same pattern of operation. Bon Host Service Corporation sells food to the restaurant corporations at cost plus 2.4% of the buyer's gross sales. Marc's Big Boy-Specialty Products, Inc. buys potatoes and resells them to the restaurant corporations. These two corporations do no other business. WBB owns all the stock of Bon Host and Specialty Products.

Ben Marcus owns 45% of the stock of WBB and his wife 30%. Gene Kilburg owns 25%. Mr. Marcus and Mr. Kilburg are the principal officers of all the corporations and perform the chief management functions of all of them. There are three district managers who perform services as needed by the restaurant corporations.

The Commissioner assessed deficiencies for fiscal years ending in 1963, 4, and 5. He gave notice that he had determined that the corporate entities were to be disregarded for income tax purposes and all income and deductions attributed to WBB under 26 U.S.C. § 61. Alternatively he determined that all in-

come and deductions were allocable to WBB under § 482 in order to prevent the evasion of taxes and clearly to reflect income.

The Tax Court upheld the Commissioner's allocation under § 482, upheld the resulting deficiencies of WBB, and found certain overpayments on behalf of the subsidiaries. The opinion appears as 52 T.C. 1073. The facts are stated in detail therein and will not be repeated here. There is little dispute except for the ultimate findings.

The ultimate findings of the Tax Court were that the operation of WBB and its subsidiaries comprised a single integrated business enterprise; WBB failed to prove that the dealings were equivalent to arm's length dealings between it and uncontrolled taxpayers; WBB failed to show that the commissioner was arbitrary, capricious, or unreasonable in attributing to WBB the gross income and deductions of its subsidiaries. The Tax Court concluded that "there was a single, integrated restaurant operation conducted and controlled by WBB through an arrangement which does not appear to have been equivalent to what would have been made had the parties dealt at arm's length."

A tax advantage resulted from division of the business among a number of corporations because each enjoyed a $25,000 surtax exemption. The commissioner asserts that an alternative attack on these exemptions is available to him under 26 U.S.C. § 269(a) and 26 U.S.C. § 1551 if the enjoyment of multiple exemptions was the major purpose in choosing the organizational pattern. He asks that if we should reverse the Tax Court's approval of allocation, he should be allowed to proceed under those sections on remand. He has filed protective appeals from the decisions as to the subsidiaries.

Taxpayers contend, in part, that although they are entities under common control, they operate in a manner in which uncontrolled parties would operate as a licensor of a franchise and licensees thereunder. If that proposition were accepted, the question would be whether the fees paid by the subsidiaries to WBB for the franchise and other services rendered were such as would be agreed on by an uncontrolled taxpayer as licensor dealing at arm's length with other uncontrolled taxpayers as licensees. And if the fees do not meet the arm's length test, the commissioner would have the prerogative to make allocations consistent with the results which would have occurred if the arrangements between the parties had met the arm's length test.[1]

The particular problem in this case is posed by the fact that the taxpayers make no claim that the fees met the arm's length test, and the fact that the commissioner has not attempted any reconstruction of the arrangements among taxpayers, but has allocated all the income and deductions to the parent corporation.

There is no evidence that the fees were equivalent to arm's length fees. Moreover, as pointed out by the Tax Court, WBB charged the restaurant corporations, in return for the franchise and certain materials, only the amounts which WBB was obligated to pay the California licensor for the same. "Thus, on two items that one might expect an independent, arm's length sublicensor to earn profits there could be none because WBB was obligated to pay out all that it was entitled to receive." WBB also collected fees for management and administration. Again, as pointed out by the Tax Court, there was no testimony to indicate how the fees were set, except that they were designed to allow WBB "a small profit." Upon analysis of the terms, the court said, "The fee structure

---

1. *I. e.*, whether the terms of transactions under consideration are such as would have been arrived at in independent transactions with or between unrelated parties under similar circumstances, considering all relevant facts. See 26 C.F.R. § 1.-482.

used by WBB permits a reasonable inference that it was a means for shifting or splitting income so as to avail WBB and its shareholders of the possible tax advantages of maintaining several corporations."

It is clear from the description set forth in the Tax Court opinion that the business carried on by the group of taxpayers is indeed highly integrated, with all policy making choices and management functions beyond the very limited scope of the individual restaurant managers being performed by Marcus and Kilburg. So much so that it seems very doubtful that unrelated entities, dealing at arm's length, would arrive at a comparable division of functions. Because of the interdependence and overlapping among the segments of the business which have been assigned to the respective corporations, it would be very difficult, merely by adjusting the fee structure, to construct a situation which would conform to the arm's length standard. A hypothetical reconstruction would be fanciful and unreal.

Taxpayers contend that there were business reasons other than tax advantages for setting up the various subsidiaries. They say that separate corporations offer advantages with respect to limiting liability, dealing with organization of employees, affording deserving employees an opportunity for proprietorship, and dealing with separate landlords. The Tax Court made no adverse finding. Moreover, taxpayers point out that each restaurant operation must have contributed in some degree to the overall net income.

The issue on the instant appeal boils down to the incidence of the burden of proof.[2] Taxpayers would argue that since it is evident that each restaurant operation generated some part of the net income and they have assigned at least the immediate operation of each to a separate corporation they have demonstrated that a total allocation is unreasonable, arbitrary, and capricious, and since the commissioner failed to prove in the Tax Court that any less extreme allocation was supportable, taxpayers ought to have prevailed.

The commissioner argues that the Tax Court decision was correct since, "faced with clear evidence that some allocation was necessary, taxpayers refrained from introducing any real proof supporting a lesser allocation."

In the light of the particular facts of this case, we conclude that the Tax Court fairly placed the burden on taxpayers. As already noted, the record indicated that the various segments of the business are so interdependent that independent entities, dealing at arm's length, would not arrive at a comparable arrangement, and that any attempt at reconstruction of taxpayers' dealings so as to approximate the arm's length standard would be fanciful and unreal. As the Tax Court saw it, "the record sustains the Commissioner's determination that WBB generated the income for the years in issue by conducting an integrated business enterprise through its divisions set up as wholly-owned subsidiary corporations." Under these circumstances, and where the taxpayers have failed to demonstrate a more favorable allocation consistent with the arm's length standard, we agree with the Tax Court that taxpayers failed to show that the commissioner's allocation was unreasonable, arbitrary, or capricious.

Our recent decision in Baldwin-Lima-Hamilton Corporation v. United States[3] reached a different solution. There the commissioner had made a total allocation of the subsidiary's income to the parent. In a refund action, taxpayer produced evidence in defense of the intercorporate transactions as meeting the arm's length test. Taxpayer succeeded in convincing

2. The power to allocate under § 482 is discretionary, and allocations between taxable entities under common control is to be upheld in court unless the court finds the allocation is unreasonable, arbitrary, or capricious. See United States Gypsum Company v. United States, 452 F.2d 448, p. 5, footnote 1 (7th Cir., 1971).

3. 435 F.2d 182 (7th Cir., 1970).

the district court. On appeal, concluding that neither the commissioner's total allocation nor the taxpayer's result was supportable, we remanded for a determination of a partial allocation. We do not elect the same solution in this case, but the two are readily distinguishable.

In the instant case, taxpayers carried on a business under arrangements where the segments of the business are so interwoven that reconstruction to comply with the arm's length standard is probably not realistic nor feasible, they made no effort to justify the terms of intercorporate transactions with respect to the arm's length test, or to establish the feasibility of reconstructing the transactions so as to comply, and the findings of the trier of the facts were adverse to the taxpayers, and not clearly erroneous.

Accordingly, the decisions of the Tax Court are affirmed.