**YOUR HOST, INC., et al., Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**CHEF FOODS, INC., et al., Petitioners-Appellees,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.**

Nos. 242, 268, Dockets 73–1311, 73–1337.

United States Court of Appeals,
Second Circuit.

Argued Oct. 18, 1973.

Decided Dec. 11, 1973.

Ralph J. Gregg, Buffalo, N. Y. (Albrecht, Maguire, Heffern & Gregg, and George M. Zimmermann, Albany, N. Y., on the brief), for Your Host, Inc., et al., petitioners-appellants and Chef Foods, Inc., et al., petitioners-appellees.

William A. Friedlander, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Ernest J. Brown and Richard S. Halberstein, Attys., Tax Div., Dept. of Justice, Washington, D. C., on the brief), for Commissioner of Internal Revenue.

Before KAUFMAN, Chief Judge, and LUMBARD and TIMBERS, Circuit Judges.

LUMBARD, Circuit Judge:

Petitioners-appellants, Your Host, Inc., and its affiliated companies, appeal from judgments of the United States Tax Court (Irwin, J.) which upheld determinations by the Commissioner of income tax deficiencies assessed for the years 1965 through 1968. Your Host, Inc., et al., 58 T.C. 10 (1972). The deficiencies were assessed pursuant to 26 U.S.C. § 482, which allows the Commissioner to allocate income among affiliated companies more properly to reflect the earning of income,[1] and pursuant to

1. 26 U.S.C. § 482 provides:

In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary or his delegate may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.

26 U.S.C. § 269, which permits the Commissioner to deny tax exemptions and deductions where an affiliated company was "acquired" for tax avoidance purposes.[2] We affirm.

Your Host, Inc., and its affiliates, operate a restaurant chain and food business in the Buffalo area. From modest beginnings in a one-restaurant partnership of A. J. Durrenberger and R. T. Wesson in 1944, the business grew so that by the mid 1960's it consisted of sixteen interrelated corporations which operated some forty "Your Host" restaurants, a food supply commissary, a bakery, a real estate holding company, and a vending machine and leasehold operation.[3] All of these enterprises remained under the control of two original partners and later, after Wesson's death in 1956, under the control of Durrenberger alone.

Out of the sixteen companies the Commissioner, pursuant to 26 U.S.C. § 482, allocated the income of twelve of them to Your Host, Inc.[4] and the income of one of them (Your Host Bakery, Inc.) to Sher-Del Foods, Inc. He furthermore determined that, pursuant to 26 U.S.C. § 269, thirteen of the companies had been established for the principal purpose of tax avoidance and he accordingly denied them the corporate surtax exemption.[5]

Upon review the Tax Court upheld the Commissioner's determinations under § 482 as to only two of the affiliated companies: the allocation of Chef Foods' income to Your Host, Inc., and the allocation of Your Host Bakery's income to Sher-Del Foods, Inc. The Tax Court held that the ten restaurant operating companies whose income had been allocated were "viable economic entities which earned their own income" and hence were not subject to income allocation.

The Tax Court also upheld the Commissioner's determinations under § 269 as to five of the affiliated companies: 309 Delaware Ave., Inc., Royal Host, Inc., Main Host, Inc., Telesnax, Inc., and Alro Realty, Inc. With respect to the

2. 26 U.S.C. § 269 provides in relevant part:
(a) In general.—If—
(1) any person or persons acquire, or acquired on or after October 8, 1940, directly or indirectly, control of a corporation, or
(2) any corporation acquires, or acquired on or after October 8, 1940, directly or indirectly, property of another corporation, not controlled, directly or indirectly, immediately before such acquisition, by such acquiring corporation or its stockholders, the basis of which property, in the hands of the acquiring corporation, is determined by reference to the basis in the hands of the transferor corporation,
and the principal purpose for which such acquisition was made is evasion or avoidance of Federal income tax by securing the benefit of a deduction, credit, or other allowance which such person or corporation would not otherwise enjoy, then the Secretary or his delegate may disallow such deduction, credit, or other allowance.

3. The principal corporations among the group were Your Host, Inc., the original company begun as a partnership in 1944 and incorporated in 1947 and which now operates fifteen "Your Host" restaurants, and Sher-Del Foods, Inc., also incorporated in 1947, which owns and runs the food process-

ing part of the business. In addition to these two principal companies, there are ten subsidiaries and affiliates which run "Your Host" restaurants: 309 Delaware Ave., Inc. (four restaurants), Royal Host, Inc. (one), Boulevard Host, Inc. (two), Utica Host, Inc. (four), Niagara Host, Inc. (four), Main Host, Inc. (three), Transit Host, Inc. (two), Sharlem Host, Inc. (three), Rochester Host, Inc. (originally three, now one), and Telesnax, Inc. (one). There is also Air Host, Inc., which runs the business's one "Royal Host" restaurant. The remaining three companies are Your Host Bakery, Inc. (supplier of bakery goods to the business), Chef Foods, Inc. (a subsidiary of Sher-Del which handles vending machine operations and which leases storage facilities to Sher-Del and Your Host Bakery), and Alro Realty, Inc. (another subsidiary of Sher-Del which owns the principal business property of Sher-Del and Your Host).

4. These were the ten companies (aside from Your Host, Inc.) which operated "Your Host" restaurants (see fn. 3), plus Air Host, Inc., and Chef Foods, Inc.

5. These were again the ten companies operating "Your Host" restaurants, plus Chef Foods, Inc., Your Host Bakery, Inc., and Alro Realty, Inc.

other eight companies which had been denied surtax exemption, however, the court held as to six that the Commissioner had erred in finding that they had been established for the principal purpose of tax avoidance. The court did not assess the validity of the Commissioner's § 269 determinations as Chef Foods and Your Host Bakery, having already sustained the Commissioner's 100% reallocation of the income of both companies under § 482.

█ Since the Commissioner has elected not to appeal the Tax Court's finding adverse to the government,[6] we need concern ourselves here only with the Tax Court's findings[7] sustaining the Commissioner's determinations. As to these we note at the outset that the Commissioner's determinations are to be set aside only if "unreasonable, arbitrary, or capricious," in the case of § 482 allocations, Wisconsin Big Boy Corp. v. C. I. R., 452 F.2d 137, 140 (7th Cir. 1971); Philipp Bros. Chemicals, Inc. v. C. I. R., 435 F.2d 53, 57 (2d Cir. 1970), and only if "clearly erroneous" in the case of denials of surtax exemptions under § 269, Dorba Homes, Inc. v. C. I. R., 403 F.2d 502, 505 (2d Cir. 1968); J. T. Slocomb Co. v. C. I. R., 334 F.2d 269, 273–274 (2d Cir. 1964).

█ Under these standards of review, we cannot say that the Commissioner's § 482 determinations were arbitrary or unreasonable. In the case of Chef Foods, Inc., whose income was allocated to Your Host, Inc., for the four years in question, it was found that Chef Foods was originally formed in 1958 to provide a vehicle for developing catering services in industrial plants. This line, however, was never developed. Instead Sher-Del Foods acquired all the stock of Chef Foods for $6,000. Chef Foods was then used to purchase cigarette vending machines which were placed only in

"Your Host" restaurants. It purchased cigarettes wholesale and sold them through vending concessions at the restaurants, the profits being shared through concession commissions to each restaurant. Chef Foods also acquired refrigeration and storage facilities in Buffalo, almost all of which were leased to Sher-Del Foods and to Your Host Bakery. For these operations, Chef Foods utilized one employee, a vending machine repairman, whose salary and expenses constituted virtually all of the operating expenses of the company. Otherwise Chef Foods shared its aliquot portion of taxes, insurance, utility, and other costs along with the other corporations as summarily determined by the common executive management of the companies. The portion of Chef Foods' profit which Durrenberger, then the surviving original partner, took as his salary was also similarly determined. Chef Foods' income from the vending machine sales and from rents averaged roughly $160,000 for each year between 1965 and 1968, with approximately 75% coming from the vending machines sales. Thus while it is true, as the dissent suggests, that Chef Foods conducted sizeable business operations in terms of cash flow, the very imbalance between the firm's posture on its balance sheets and the actual scope of its operations, in terms of its labor force, capitalization, work site, and so forth, suggests that the firm was kindred in nature to the kind of sham enterprise which this court held properly subject to income allocation in Philipp Bros. Chemicals, Inc. v. C. I. R., *supra*. At least, given Chef Foods' position within the "Your Host" group, it was not unreasonable for the Commissioner to have allocated the income of Chef Foods as he did. See also Wisconsin Big Boy Corp. v. C. I. R., *supra;* and Hamburgers York Road, Inc., 41 T.C. 821 (1964).

6. The Commissioner has filed a protective cross-appeal requesting that, in the event we reverse the Commissioner's § 482 determinations as to Chef Foods and Your Host Bakery, we remand to the Tax Court for consideration of the Commissioner's § 269 determinations with respect to both companies.

Since we affirm the decision below, we need not consider this cross-appeal.

7. We have not thought it necessary to recount all the findings of the Tax Court since they are set out in detail in its opinion, 58 T.C. 10 (1972).

■ For the same reasons we are constrained not to disturb the Commissioner's allocation of the income of Your Host Bakery, Inc., to Sher-Del Foods, Inc. The bakery sold its products only to Sher-Del. Sher-Del in turn sold these products to the various "Your Host" restaurants but at the same price at which it had bought them. The entire profit of the baking part of the enterprise thus went to the bakery even though Sher-Del Foods was the seller to the rest of the chain. In addition, although the bakery did employ a sizeable work force (unlike Chef Foods), it did share the same top-level management as Your Host, Inc., and Sher-Del Foods, Inc., with similar apportionment of salaries and expenses. Furthermore, it shared the same premises with Sher-Del Foods.

Although not conceding the point, appellants contend that under these circumstances the Commissioner was at best entitled to allocate the bakery's income to Sher-Del only to the extent of determining a reasonable profit to Sher-Del for its services in distributing the bakery's products to the "Your Host" chain. The dissent endorses this position, and cites in support of it language in our decision in W. Braun Co. v. C. I. R., 396 F.2d 264 (2d Cir. 1968). However, in view of the highly integrated nature of the business enterprise, we do not believe that it was unreasonable for the Commissioner to have concluded that all of the bakery's income should be attributable to Sher-Del. As we said in the later case of Philipp Bros. Chemicals, Inc. v. C. I. R., *supra*, 435 F.2d at 59:

> [T]he taxpayer had the burden of showing that the 100% allocation of income to the [parent] corporation was unjustified. Taxpayers ask us to remand the case in order to allow them an opportunity to establish that the 100 per cent allocation was unreasonable and to show what a reasonable

allocation would be. We see no reason for according them another chance.

. . .

The petitioners here having similarly failed to demonstrate the reasonable allocation which they claim was their due, we believe our position as stated in the *Philipp* case is controlling. See also Wisconsin Big Boy Corp. v. C. I. R., *supra*, 452 F.2d at 140; Ballentine Motor Co. v. C. I. R., 321 F.2d 796 (4th Cir. 1963); Hall v. C. I. R., 294 F.2d 82 (5th Cir. 1961).

■ The Commissioner's determinations under 26 U.S.C. § 269, to disallow the surtax exemption for five of the appellants' corporations, were also within permissible limits.[8] We note that four of these five (Telesnax, Inc., Royal Host, Inc., Main Host, Inc., and 309 Delaware Ave., Inc.) were merely alternate vehicles for operating additional "Your Host" restaurants. They were all thinly capitalized. They were all financed by substantial loans from Your Host, Inc., and from Sher-Del Foods, Inc., loans either not evidenced by notes or established through a system of delayed billing. More importantly, in none of these four instances were the appellants able to proffer reasons for their separate incorporation other than a desire to limit liability for its own sake (which is in any event a necessary consequence of incorporation) and, in the case of Telesnax, the additional desire to give Wesson and Durrenberger's accountant a capital share in the business. Unlike the situation regarding the six "Your Host" companies where the Tax Court found the principal purpose of incorporation to have been other than tax avoidance, for these four restaurant operating corporations the appellants cited no unusual risks incumbent on the ventures, such as location in an untried shopping center development or in a community with strong pre-established competition, nor any other factors, such as the need to

---

8. There is, of course, no longer any question that the formation of a new corporation can be an acquisition for the purposes of § 269, James Realty Co. v. United States, 280 F.2d 394 (8th Cir. 1960), and also that § 269 applies to an acquired corporation as well as to an acquiring corporation, Concord Supply Corp., 37 T.C. 919 (1962).

protect a corporate name not already protected or to protect the goodwill of a particular restaurant, which might have been persuasive of the necessity for separate incorporation.[9] Accordingly, the Commissioner's conclusion that tax avoidance was the principal purpose behind their separate incorporation was not "clearly erroneous." See Scroll, Inc. v. C. I. R., 447 F.2d 612 (5th Cir. 1971); Bobsee Corp. v. United States, 411 F.2d 231 (5th Cir. 1969); Borge v. C. I. R., 405 F.2d 673 (2d Cir. 1968).

Although incorporated for reasons other than operating a "Your Host" restaurant, Alro Realty, Inc., presents no different considerations in regard to the Commissioner's disallowance of its surtax exemption. Appellants argued before the Tax Court that the principal purpose for establishing Alro was to facilitate real estate mortgage financing for the overall enterprise. Yet, the operation of Alro subsequent to its formation undercuts that contention.

█ Alro was created by Wesson and Durrenburger in 1951 with a capitalization of $2,000. It then purchased all of Sher-Del Foods' business real estate, including the commissary building, by delivering promissory notes totalling $112,822.93, but failed to assume Sher-Del's prior mortgage obligation. Moreover, although Alro has repaid a mere $3,000 on these notes, Sher-Del has continued making capital advances to Alro. In sum, Alro has never been utilized as a financing vehicle or in any other manner to improve the working capital position of its parent, Sher-Del, or its affiliate, Your Host, Inc. On these facts the Commissioner was not clearly erroneous in determining that Alro was established for the principal purpose of tax avoidance. See · Bobsee Corp. v. United States, supra, 411 F.2d at 238; Dorba Homes v. C. I. R., supra, 403 F.2d at 505–506.

█ The only troublesome point which remains concerns the apparent inconsistency of the Tax Court's conclusions under §§ 482 and 269. The four restaurant operating corporations of the "Host" group which have been denied the surtax exemption because of their "acquisition" for the principal purpose of tax avoidance were also found, however, to have "sound business reasons" for their separate corporate existence, so that as to them the Tax Court reversed the Commissioner's income allocations under § 482. This apparent inconsistency is resolved by the fact that a company may operate from day to day as a valid economic entity although it may have originated as a tax avoidance device. Sections 482 and 269 of the Code look to different periods in a corporation's existence, as they also look to different elements of proof: economic reality in reference to income versus inference of intent in reference to tax savings. Thus even though the establishment of these elements requires in part the assessment of common facts in the conduct of a company after its "acquisition," the purposes relevant to such assessment may be quite distinct. In a case very similar to the present one, this court cautioned against

confus[ing] "a purpose," the continued existence of which may be enough to eliminate [an adverse determination under § 482], with "the principal purpose" to evade or avoid the Federal income tax, the initial presence of which governs § 269 and which may exist alongside other secondary reasons for the formation of the corporation.

Dorba Homes, Inc. v. C. I. R., *supra*, 403 F.2d at 506. That caution is no less applicable to the facts of the instant case.

█ We find no merit in the appellants' final contention that the application by the Commissioner of the sanctions of § 269 "so many years after the

---

9. The circumstances which the dissent urges as justifying the separate incorporation of 309 Delaware Ave., Inc., for example the slightly higher rent, the smaller number of pedestrians, and so forth, are marginal at best. These factors are not equivalent to such substantial risks as taking on established competition or beginning business operations in a city where the "Your Host" name was generally unknown.

fact" is a violation of the due process clause.

The judgments of the Tax Court are accordingly affirmed.

TIMBERS, Circuit Judge (dissenting in part):

Since I am disturbed by certain inconsistencies in the Tax Court decision and by the majority's placing the imprimatur of our Court on those inconsistencies, I respectfully dissent in part.

With respect to the Section 482 allocations, I dissent from the majority opinion to the extent that it affirms the Tax Court in upholding the Commissioner's allocation of Chef Foods' income to Your Host and his allocation of the entire income of Your Host Bakery to Sher-Del Foods. As to the Chef allocation, I would reverse. As to the Bakery allocation, I would reverse and remand for determination of a proper adjustment and a reallocation of income.

With respect to the Section 269 surtax exemptions, I agree with the majority's affirmance of the Tax Court in upholding the Commissioner's disallowance of surtax exemptions for four of appellant's five affiliated companies. As to the 309 Delaware restaurant, however, I would reverse and hold that the Commissioner's disallowance of its surtax exemption was clearly erroneous.

## I.

Section 482 of the Internal Revenue Code of 1954, 26 U.S.C. § 482 (1970), authorizes the Commissioner to "allocate gross income" among the units of commonly controlled business organizations. Its purpose is to prevent tax evasion or clearly to reflect the income of the vari-ous parts of an integrated corporate group. While this statute gives the Commissioner broad discretion to allocate income, it does not permit him to disregard a separate corporate entity if it exists for "a bona fide business purpose", W. Braun Co. v. C. I. R., 396 F.2d 264, 268 (2 Cir. 1968), and if it conducts substantial business activities and earns its own income. Philipp Brothers Chemicals, Inc. v. C. I. R., 435 F.2d 53 (2 Cir. 1970). Nor does this statute permit the Commissioner to substitute his business judgment for that of management. The fact that a parent corporation might have performed services for itself rather than establishing a subsidiary for that purpose is irrelevant so long as the latter is a viable, going concern. Philipp Brothers Chemicals, Inc. v. C. I. R., supra, 435 F.2d at 58. Income allocation is proper only when the income earned by one corporation is artificially deflected to another.[1]

Applying these criteria to the instant case, the Tax Court held that the ten restaurant corporations were "economically viable business entities". 58 T.C. at 27. It refused to uphold the Commissioner's allocation of their income to Your Host. The Tax Court based its conclusion on the fact that these corporations earned their own income and paid their own costs of doing business.[2]

If the Tax Court was correct in holding such operational autonomy to be a bar to income allocation with respect to the ten restaurant corporations, I fail to understand the majority's conclusion with respect to Chef Foods. Chef was a viable, independently functioning business enterprise. It had cigarette vending machine sales averaging $130,000 per

---

1. See 7 Mertens, Law of Federal Income Taxation § 38.63 (Zimet & Barton rev. 1967):
   "The identity of businesses is to be preserved and the Secretary or his delegate has no authority under [§ 482] to merge them into one single business unless the businesses are carried on and manipulated in such a way as to constitute one single business, or unless the 'controlled enterprise' is a sham." (citations omitted).

2. Each of the ten restaurant corporations paid for its own nonadministrative help, supplies, utilities, state and federal taxes, social security contributions, fire insurance premiums and license fees. Each was solely responsible for payment of its own rent. Each paid a proportionate share of the common administrative and group insurance costs.

year; it had a salaried employe for whom it paid workmen's compensation and social security contributions; it owned its own vending machines and maintained a substantial inventory; it paid its own utilities, taxes, automobile expenses and, as did the ten restaurant corporations, a proportionate share of group insurance and general administrative costs.[3] Chef conducted its business no differently than did its competitors. It serviced its own machines, collected receipts and paid commissions based upon the amount of merchandise sold.

These factors clearly distinguish the instant case from Philipp Brothers Chemicals, Inc. v. C. I. R., *supra*. There we affirmed the Tax Court in sustaining the Commissioner's allocation of the entire income of foreign sales subsidiaries to their parent upon a finding that they had had no employees, no inventory and did nothing whatever to earn the income they reported. That is a far cry from the situation here.

The case against allocating all of Your Host Bakery's income to Sher-Del Foods is even more compelling. Bakery had sales in excess of $175,000; it had a payroll of approximately $50,000; it purchased more than $80,000 worth of raw materials; and it paid for its own insurance, linen, laundry and operating supplies. These are clear indices of operational autonomy. They demonstrate that Bakery was a viable, income earning enterprise. I see no basis for the Tax Court's conclusion that Bakery "could hardly be considered to have conducted any business." 58 T.C. at 28–29.

True, Bakery sold its entire output through Sher-Del which acted without charge as Bakery's middleman, delivery and billing agent. There was some income distortion. This does not mean, however, that a Section 482 allocation of 100% of the subsidiary's income is appropriate. While Sher-Del has not established the adjustment necessary to reflect the cost to it of these services, it has demonstrated that Bakery earned a substantial portion of its reported income. In an analogous situation, we held that

"[t]he Commissioner was . . . not justified in arbitrarily allocating *all* of [the subsidiary's] taxable income to petitioner." W. Braun Co. v. C. I. R., *supra*, 396 F.2d at 268. (emphasis added).

I would remand for a determination of the proper adjustment of Sher-Del's costs as a basis for reallocating Bakery's income to Sher-Del according to law.[4]

## II.

Since Your Host did not demonstrate non-tax avoidance reasons for the separate incorporation of Telesnax, Inc., Royal Host, Inc., Main Host, Inc. and Arlo Realty, Inc., the Tax Court correctly upheld the Commissioner's disallowance of their surtax exemptions pursuant to Section 269 of the Internal Revenue Code of 1954, 26 U.S.C. § 269 (1970).

The specific findings of the Tax Court with respect to 309 Delaware Ave., Inc.,[5] however, establish that it was formed for the very reasons said to

---

3. The majority notes that Chef had insubstantial business expenses. As long as Chef was a viable enterprise and received no services from Your Host for which the latter was not adequately compensated—i. e. no income distortion—that fact would appear irrelevant.

4. A proper adjustment would involve an increase in Sher-Del's income sufficient to reflect the cost to it of the billing and delivery services provided for Bakery and a corresponding decrease in Bakery's income.

5. The Tax Court found with respect to the 309 Delaware restaurant:

"The prospects for a restaurant at 309 Delaware Avenue were not as favorable as those enjoyed at the other Your Host locations. The rent was higher there than for other locations ($250 to $300 per month over a seven-year period compared to a $200 maximum per month on a ten-year lease at 3232 Bailey Avenue). There were no adjacent parking facilities, and pedestrian traffic was not as heavy as at other locations." 58 T.C. at 14.

have justified the formation of the eight other "Host" companies as to which the Tax Court found the principal purpose of incorporation to have been other than tax avoidance. These findings by the Tax Court strike me as undermining the majority's assumption that there were "no unusual risks . . . which might have been persuasive of the necessity for separate incorporation" of 309 Delaware. I would hold that the Commissioner's disallowance of its surtax exemption was clearly erroneous. See Borge v. C. I. R., 405 F.2d 673 (2 Cir. 1968).