GEORGE MARCUS and NEVA MARCUS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Marcus v. Commissioner
Docket No. 848-73.
United States Tax Court
T.C. Memo 1975-158; 1975 Tax Ct. Memo LEXIS 216; 34 T.C.M. (CCH) 722; T.C.M. (RIA) 750158; May 22, 1975, Filed Alan Adelson, for the petitioners. Patrick R. McKensie and Chauncey W. Tuttle, Jr., for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined the following deficiencies in the petitioners' Federal income taxes: Year
Deficiency
1968
$ 5,036.55
1969
16,579.79 Due to concessions, the only issue to be decided is whether the petitioner has proved that the Commissioner acted unreasonably, arbitrarily, or capriciously in allocating under section 482 of the Internal Revenue Code of 1954 the income of one *217 corporation to another corporation, both of which were in the dry cleaning business and both of which were owned by the same shareholders. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioners, George and Neva Marcus, husband and wife, resided in Des Plaines, Ill., at the time of filing their petition herein. They filed joint Federal income tax returns for the years 1968 and 1969. In 1960, Mr. Marcus and Earl Ruby acquired Cobo Cleaners (Cleaners), a cleaning establishment located in Detroit, Mich., which they operated as a partnership, with each partner owning a 50-percent interest. In order to acquire additional business for Cleaners, Mr. Ruby contacted the J. L. Hudson Company (Hudson), a large retail chain store in Detroit. Hudson sold merchandise and provided various services to its customers, such as dry cleaning and car rentals. At the time Mr. Ruby contacted Hudson, it was interested in contracting with a different company to operate its dry cleaning services. Hudson selected Cleaners, and on December 17, 1962, it entered into a contract (the contract) with Cleaners to perform that service for it. Under the contract, *218 Cleaners agreed to provide dry cleaning services for Hudson's customers at several of its outlets. The contract required Cleaners to furnish employees to operate its facilities at Hudson. Hudson agreed to provide space, utilities, certain business equipment, and telephone service. It was to receive a commission on all dry cleaning performed for its customers. On January 1, 1965, Cleaners was incorporated, and Mr. Marcus and Mr. Ruby each acquired 50 percent of its stock. Hudson's consent to the incorporation was secured, and on January 20, 1965, the contract was amended to reflect such change. During the spring of 1966, Cleaners and Hudson were each involved in labor disputes with some of their employees. At that time, some of the employees of both belonged to labor unions. However, Hudson's and Cleaners' employees who worked in Hudson's retail stores were not unionized. Hudson wished to forestall unionization of its store employees and, in an effort to do so, approached Mr. Ruby and suggested that the operation at Hudson's be divided from the rest of Cleaners' business. Hudson's aim was to separate Cleaners' unionized employees from those working in Hudson's stores. Mr. Ruby agreed *219 to sever the operations since he feared that Cleaners might lose the Hudson business if they failed to cooperate. On June 1, 1966, Cobo-Rumar Sales, Inc. (Sales), was organized, with Mr. Marcus and Mr. Ruby each acquiring 50 percent of its stock. Its purpose was to "engage in the business of retail cleaning and drying upon the premises and on behalf" of Hudson. On August 2, 1966, the contract between Cleaners and Hudson was assigned to Sales without consideration. Mr. Marcus and Mr. Ruby agreed that Sales would carry out Cleaners' functions under the contract, and as individuals, they guaranteed Sales' performance under the contract. Throughout the years 1967, 1968, and 1969, Sales and Cleaners had the same street address in Detroit, Mich.Each company kept separate records and books of account. The receipts of the two companies were not commingled. Sales used a telephone system whereby a customer calling its operation at a Hudson store was switched to Sales' office at Cleaners' plant. Sales owned no delivery trucks and no office equipment; it had no assets except for the contract with Hudson. It had no employees; those employees who worked at Hudson's stores were paid by Cleaners. *220 Sales reported the following income and deductions on its Federal income tax returns for the years 1967, 1968, and 1969: [1]
1967
1968
1969
Gross income
$58,566
$69,457
$109,756
Deductions
Salaries & wages
37,060
42,456
40,681
Taxes
339
1,196
6,062
Advertising
3,695
2,942
1,669
Claims
760
558
89
Legal-accounting
200
200
111
Outside work
139
6,301
809
Supplies
1,481
1,463
1,268
Cash shortage
(41)
113
Office services
4,433
331
Repairs
110
91
Contributions
35
990
Delivery
10
Insurance
555
Bank service charge
10
Employees' union in-
surance & pension
1,916
Miscellaneous
53
Taxable income
10,489
14,084
55,123
Cleaners reported the following gross and taxable income on its Federal income tax returns for the years 1967, 1968, and 1969: [1]
1967
1968
1969
Gross income
$914,739
$1,031,451
$985,693
Taxable income
23,335
67,577
38,074 Sales did not deduct any amount for compensation of its officers on its returns for such years; on its returns for those years, Cleaners claimed deductions *221 for compensation of its officers. For the taxable years beginning after December 31, 1967, Cleaners made an election to be taxed as a small business corporation. In his notice of deficiency, the Commissioner determined that the taxable income reported by Sales was attributable to Cleaners, and due to Cleaners' election to be taxed as a small business corporation, the petitioners' income was accordingly increased. Certain other adjustments were made which have been settled. OPINION The issue to be decided is whether the income reported by Sales may be allocated to Cleaners under the provisions of section 482. Such section provides in pertinent part that: In any case of two or more * * * businesses * * * owned * * * directly * * * by the same interests, the Secretary or his delegate may * * * allocate gross income, deductions, credits, or allowances between or among such * * * businesses, if he determines that such * * * allocation is necessary in order * * * clearly to reflect the income of any of such * * * businesses. Corporations may be organized for various reasons, and if one is organized for a business purpose, other than merely to *222 avoid taxes, and if it actually engages in business, it will be recognized as a separate entity for tax purposes. Moline Properties, Inc. v. Commissioner,319 U.S. 436 (1943); Gregory v. Helvering,293 U.S. 465 (1935). Also, corporations owned by the same shareholders may carry on business with each other. However, the transactions between such corporations may be reviewed by the Commissioner, and he is authorized by section 482 to redistribute their income among them when he finds it necessary to do so in order clearly to reflect the income of any of the businesses. In Pauline W. Ach,42 T.C. 114, 125-126 (1964), affd. 358 F. 2d 342 (6th Cir. 1966), cert. denied 385 U.S. 899 (1966), we said: The legislative history of section 482 indicates that it was designed to prevent evasion of taxes by the arbitrary shifting of profits, the making of fictitious sales, and other such methods used to "milk" a taxable entity. * * * The Commissioner has considerable discretion in applying this section and his determinations must be sustained unless he has abused his discretion. We may reverse his determinations only *223 where the taxpayer proves them to be unreasonable, arbitrary, or capricious. * * * In judging transactions between corporations owned by the same shareholders, we said in Huber Homes, Inc.,55 T.C. 598, 605 (1971): In order to prevent the artificial shifting of income from one related business to another, section 482 places a controlled taxpayer on a parity with an uncontrolled taxpayer, by determining according to the standard of an uncontrolled taxpayer, the true net income of a controlled taxpayer. * * * See also Baldwin-Lima-Hamilton Corp. v. United States,435 F. 2d 182 (7th Cir. 1970); Oil Base, Inc. v. Commissioner,362 F. 2d 212, 214 (9th Cir. 1966), affg. a Memorandum Opinion of this Court, cert. denied 385 U.S. 928 (1966); Simon J. Murphy Co. v. Commissioner,231 F. 2d 639 (6th Cir. 1956), revg. 22 T.C. 1341 (1954). The Commissioner urges that all the income reported by Sales should be allocated to Cleaners because Cleaners earned that income by performing all the duties under the contract with Hudson. He also argues that the petitioners have failed to demonstrate that Sales *224 and Cleaners dealt with each other at arm's length. We find that the petitioners have utterly failed to carry their burden of establishing that the Commissioner's allocation was unreasonable, arbitrary, or capricious. The facts presented in this case are very meager; they contain no description of the daily operations of Cleaners and Sales. The facts that were presented do not assist the petitioners in carrying their burden of proving that the income was earned by Sales and that it dealt with Cleaners at arm's length. The basic arrangement with Hudson was made almost 4 years before Sales was organized, and after its organization, the contract was transferred to it without payment of any consideration. Mr. Marcus and Mr. Ruby were required to guarantee the performance of Sales; thus, its sole customer relied on Cleaners' past performance in accepting the assignment of the contract to Sales. Marc's Big Boy-Prospect, Inc.,52 T.C. 1073 (1969), affd. sub nom. Wisconsin Big Boy Corp. v. Commissioner,452 F. 2d 137 (7th Cir. 1971). From the evidence, we cannot ascertain what services were performed by Sales that would entitle it to the income reported *225 by it. On its returns for 1967, 1968, and 1969, Sales claimed large deductions for wages to employees, but there is no evidence as to what employees were paid by Sales. Mr. Ruby, who testified that he was familiar with the operation of the two businesses, stated that the individuals who handled the Hudson business were employees of Cleaners. The record is clear that Sales had no assets, other than the contract with Hudson--it is also clear that Sales did not actually perform the cleaning work. Sales claimed deductions for certain other business expenses, but there is no evidence supporting those claims. The amounts claimed as deductions were nominal; it is clear that such figures do not represent the actual costs of pick-up and delivery of clothes to be cleaned and of dry cleaning them. Cleaners and Sales maintained separate books and records; but in view of all the evidence of the integration of the two businesses, such fact does not compel us to conclude that Sales' income cannot be allocated to Cleaners. Glen A. Jordan,60 T.C. 872 (1973). In summary, the petitioners have provided no evidence showing that Sales performed any services to earn the income reported *226 by it, nor have they given us any evidence as to the arrangements between Sales and Cleaners to establish that those arrangements were conducted at arm's length. In view of such circumstances, it is clear that the petitioners have failed to carry their burden of proof. Cleaners made a gift to Sales of its only income-producing asset, and so far as we know, Cleaners continued actually to perform the work which generated the income. Glen A. Jordan,supra;Philipp Bros. Chemicals, Inc.,52 T.C. 240 (1969), affd. 435 F. 2d 53 (2d Cir. 1970); compare NatHarrison Associates, Inc.,42 T.C. 601 (1964). There appears to be no significant difference between this case and Hamburgers York Road, Inc.,41 T.C. 821 (1964). In that case, an established department store started a new store at a different location, but with the same name and in the same business. The advertising, merchandising, selection of employees, and bookkeeping were all handled through the older store. The Court held that the two stores constituted a single business of which the new store was a branch operation. The older had contributed *227 its reputation and the newer its location and some capital to the enterprise; however, the new store's contribution did not account for any profits, and income earned by both stores was allocated to the older store. In like manner, from the evidence available to us, it appears that Sales was instituted and operated as a branch operation of the cleaning business. All of its income was generated through its use of Cleaners' equipment. There are no grounds for doubting that Sales' fiscal and cleaning activities were controlled by Cleaners. Accordingly, based on this record, we must sustain the Commissioner's determination and hold that all of Sales' income is allocable to Cleaners. See also Advance Machinery Exch. v. Commissioner,196 F. 2d 1006 (2d Cir. 1952), affg. a Memorandum Opinion of this Court, cert. denied 344 U.S. 835 (1952). The petitioners argued extensively that Sales was created for a valid business reason and that when a corporation is so created, the sanctity of the corporate structure cannot be invaded for purposes of reallocating income under section 482. In reliance on Moline Properties, Inc. v. Commissioner,319 U.S. 436 (1943), *228 and Aldon Homes, Inc.,33 T.C. 582 (1959), they argued that Sales was a viable business corporation which must be recognized for tax purposes. However, these arguments fail to come to grips with the question of the applicability of section 482. Even though a corporation is formed for a valid business purpose and recognized as a separate taxable entity, any business carried on by it with a related business is subject to review under section 482, and if the Commissioner finds that the business is not carried on at arm's length, he may reallocate income under the authority of that section. Hamburgers York Road, Inc.,supra; see Your Host, Inc.,58 T.C. 10 (1972), affd. 489 F. 2d 957 (2d Cir. 1973), cert. denied 419 U.S. 829 (1974). The petitioners urged that Polak's Frutal Works, Inc.,21 T.C. 953 (1954), and Johnson Bronze Co.,T.C. Memo. 1965-281, hold that business purpose is relevant to the application of section 482 and that the existence of a valid business purpose prevented the applicability of section 482. Although business purpose was considered in those cases, *229 it was in connection with other questions, and the Court's conclusion that section 482 was not applicable was based on other grounds. The petitioners also referred to Commissioner v. First Security Bank of Utah,405 U.S. 394 (1972), for support of their position. That case held that, since certain banks did not receive and were prevented by statute from receiving certain income, such income could not be attributed to them. However, Cleaners' apprehension that it would lose Hudson's business if it did not separately incorporate its Hudson operation presents a significantly different picture. No law prevented its continued receipt of income from Hudson; it chose to create Sales in order to continue working for Hudson. The petitioners also argued that allocation under section 482 is improper where the books of account have not been challenged by the Commissioner. As support for their contention, the petitioners referred to Cedar Valley Distillery, Inc.,16 T.C. 870 (1951), and Chelsea Products, Inc.,16 T.C. 840 (1951), affd. 197 F. 2d 620 (3d Cir. 1952), among other cases. The propositions on which the petitioners relied *230 in such cases were stated in the context of the conclusions that, under section 45 of the Internal Revenue Code of 1939, the predecessor to section 482, the Commissioner was not authorized to allocate net income. However, the courts have since recognized that under section 482, the Commissioner can allocate profits or net income. Hamburgers York Road, Inc.,supra;Ballentine Motor Co.,39 T.C. 348 (1962), affd. 321 F. 2d 796 (4th Cir. 1963). Decision will be entered for the respondent.
Footnotes
1. All amounts have been rounded to the nearest dollar.↩
1. See footnote 1 supra.↩